THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY v. R. S. ANDREWS.

1. DAMAGES, *Measure of, for Obstruction of Alley by Railroad Company.* Where a railroad company obstructs an alley in a city, by building a railroad track through the alley, so as afterward to make the alley useless as an alley, an abutting lot-owner has the right, if he chooses, to consider the obstruction as a permanent taking and appropriation of the alley by the railroad company, and may commence an action against the railroad company and recover damages for such obstruction; and in such case, the measure of his damages will be the injury to his lot at the time the alley was taken and appropriated by the railroad company, and not at the time of the trial of the case.

2. ———— Other matters considered in the opinion.

*Error from Atchison District Court.*

ACTION brought by *Andrews* against the *Railroad Company*, to recover damages to certain lots in the city of Atchison, owned by the plaintiff. Trial before W. D. W., judge *pro tem.*, and a jury, at the November Term, 1880, of the district court, and verdict and judgment for the plaintiff for $2,000. The defendant brings the case here. The facts are stated in the opinion.

*Everest & Waggener,* for plaintiff in error:

The court below excluded certain evidence offered by the defendant, upon the theory that the investigation as to the depreciation in the value of the lots, if any, by reason of the obstruction of the alley, should be confined to the time when the suit was being tried in the court below. In the case of *Rld. Co. v. Twine,* 23 Kas. 585, this court asks the question in substance: "Is not the obstruction of ingress and egress an appropriation of private property, for which compensation is to be made?" If this question be answered in the affirmative, then plaintiff's cause of action accrued when the property was taken, and the amount of damage must be ascertained, with reference to its value at the time it was taken and appropriated. The institution of this action by the plaintiff was tantamount to an election on his part to treat the act of the railroad company as a permanent appropriation of the alley. (23 Kas. 595; 17 id. 227, 228.) This court has established the rule that the inquiry as to the value of land taken, or damages thereto, is properly directed to the time when the property is appropriated. (8 Kas. 410, 420. See also 10 Minn. 267; 17 id. 439; 18 id. 384; 19 id. 500; 21 id. 125, 126, 424.)

The court committed material error in refusing to instruct the jury that "in estimating the value of plaintiff's property, their estimate must not be made upon the basis that it was residence property alone, but that they must take into consideration the true market value of said property with refer-

ence to its capabilities." (Instruction No. 21.) (Mills on Eminent Domain, §173; 58 Mo. 496; 117 Mass. 302; 111 id. 125, 132; 12 Cush. 605, 611; 11 id. 201; 64 Ill. 353; 22 N. J. L. 495; 17 Wend. 649; 36 L. J. [Q. B.] 322.)

*Hudson & Tufts,* for defendant in error:

As to the measure of damages, the court below committed no error. This court has settled, in 23 Kas. 585, that the plaintiff is entitled to recover upon the facts as alleged in his petition; that he can recover all damages which he has sustained by the depreciation of his property by reason of the wrongful use of said alley by the plaintiff in error. It has also settled that this kind of an injury is permanent, or at least that it may be so regarded, and that a *recovery* by the plaintiff below settles forever his right to again question such use by the railroad company. Thereafter, the illegal and improper manner in which said track was constructed and used becomes proper and legal as to this defendant in error.

The plaintiff in error intimates that possibly the amount of damages as found by the jury might have been less, though no complaint is made as to the amount, for it is small as compared with the amount the evidence warranted, had the questions to determine the amount been directed, in point of time, to a different period; for instance, to the time when the suit was commenced, or when the track was laid down. We see no reason for supposing that that would make any difference. But if it did, who should have the benefit of that—the owner of the property who had an undoubted right to the use of the alley, or the railroad company which had wrongfully appropriated it to its own use to the entire exclusion of defendant in error, and thereby greatly reduced the value of his property abutting thereon?

The plaintiff in error says that defendant in error may treat the injury as "a *quasi* condemnation of a certain interest in his property." In some respects it may be said to be so. But we do not believe that this court in using that language intended to decide that in every respect the rules of law govern-

ing the measure of damages in condemnation proceedings are also to govern in cases of this kind. But for the sake of argument, suppose it so intended. Plaintiff in error contends that the investigation of damages should be directed to the time when it appropriated the entire use of the alley. That is not the law in condemnation proceedings. (8 Kas. 422.) The language of the decision is: "Ordinarily, the correct time to which to confine the valuation is the time of filing the commissioners' report." Why? Because the owner is then, in law, supposed to give his consent to such taking. No man's property can be legally appropriated without his consent, either express, or by operation of law, as in condemnation proceedings. When did Andrews give his consent to such appropriation in this case? When he recovered the judgment now sought to be reversed, and not before. He then, in the language of this court, gave "assent on his part to such manner of using the highway by the company," (23 Kas. 595,) and such recovery forever concludes him and all subsequent owners of the property. If the plaintiff in error had wrongfully taken a horse from defendant in error and converted the same to its own use, in a suit for damages it would be compelled to pay the highest price of such horse between the time of the taking and that of the trial. (34 N. Y. 493.)

It is urged that instruction No. 21, asked by defendant below, ought to have been given. That instruction as it stands does not state the law correctly and clearly. The jury had been instructed that the market value must govern. The word "capabilities," as there used, is misleading. If by it is meant that Andrews should destroy his dwelling houses and put up some kind of buildings, the use of which would require side-tracks, then obviously it is not the law. But no point was or could be made that they were used for any other purpose than that for which they were built—dwelling houses. This is virtually conceded. The cases cited under this head have no application whatever.

The opinion of the court was delivered by

VALENTINE, J.: On the 13th day of September, 1878, the defendant in error, R. S. Andrews, filed his petition in the

Statement of facts. district court of Atchison county, alleging in substance that the plaintiff in error, the Central Branch Union Pacific railroad company, is a railroad corporation incorporated under the laws of the state of Kansas; that the city of Atchison is a city of the second class, in such state; that the plaintiff is and for many years had been, the owner and in the possession of lots numbered 16, 17, 18, 19, 20 and 21, in block 23, in Challiss's addition to said city; that immediately south of and next adjoining these lots, is an alley 15 feet wide, which alley had been duly set apart and dedicated to the use of the public, and for the use and benefit of adjoining lot-owners, and for all proper uses as a street or alley in said city; that for many years previous to the 1st day of August, 1877, the alley had been open to the use of the public in the same manner as other alleys and streets in said city; that the plaintiff had long been accustomed to, and had and has a right to use the alley, and that the alley was and is the only way by which the plaintiff can have ingress to and egress from the south end of his lots; that on or about the 1st day of August, 1877, the defendant illegally, wrongfully and improperly obstructed the alley, by illegally, wrongfully and improperly digging ditches therein and laying down and building its railroad track therein, and since about the 1st day of August, 1877, has kept its railway cars and coaches continually and at all times standing upon its track in said alley; and has kept the ditches and the track in such condition as to illegally, wrongfully and improperly obstruct the alley during all the time since about the 1st day of August, 1877, and has since that time illegally, improperly and wrongfully deprived this plaintiff of all use and benefit of the alley; that at that time, and before and since, and at this time, the plaintiff had and has upon his lots lasting and valuable improvements, consisting of two large and commodious dwelling houses, together with barns, stables, etc., used as residence property, and that by reason of the acts aforesaid the plaintiff has sustained damages in the sum of $5,000. On the 4th day of October, 1878, the

defendant railroad company filed its answer, containing in substance a denial of the allegations of plaintiff's petition. The defendant also set up the act of the legislature of the territory of Kansas, under which it was incorporated; also a copy of an ordinance of the city of Atchison, granting to it the right of way on and over said alley, which ordinance was passed and approved June 22, 1864; and also another ordinance of the city of Atchison, passed and approved December 13, 1870, amendatory of the first-mentioned ordinance; and further alleging that said track along and over said alley was laid down and constructed under and by virtue of the laws of the territory and of the state of Kansas, and in pursuance of and in strict conformity to the terms and provisions of said ordinances of the city of Atchison. After the disposition of several motions filed by the plaintiff, on the 29th day of January, 1879, the plaintiff filed his reply to defendant's answer, which was in effect a denial of the allegations of the answer. On the 29th day of April, 1879, the plaintiff verified his reply by attaching thereto his affidavit. The defendant filed a motion to strike out the verification to the reply, which motion was overruled, and defendant excepted. On March 4, 1879, the railroad company filed its motion for judgment on the pleadings. This motion was overruled, defendant duly excepting, and on June 29, 1879, the railroad company filed its motion to have the city of Atchison made a party to the action. This motion was also overruled, defendant duly excepting. The case was tried at the November term of the court in 1880, before the court and a jury. The trial resulted in a general verdict for the plaintiff against the railroad company for $2,000. A motion for a new trial was made by the defendant, and overruled by the court; also a motion for judgment on the findings of fact; and judgment was rendered on the verdict against the railroad company, and in favor of the plaintiff, for $2,000. The railroad company duly excepted, and now brings the case to this court for review. In addition to the general verdict, particular questions of fact were submitted to and answered by the jury.

The record contains all the evidence and instructions, and is a full and complete transcript and history of the case and all the proceedings therein.

The wrong committed by the defendant, and for which the plaintiff claims damages, was in constructing one of the side-tracks of its road through the alley south of the plaintiff's lots, and thereby so obstructing the alley that it could not any longer be used as an alley. This side-track was constructed about August 1, 1877. This suit was commenced September 13, 1878, and the trial of this case was commenced November 23, 1880. The jury allowed the plaintiff $2,000 damages; and this was upon the principle that the plaintiff's lots were worth, *at the time of the trial,* $8,000, and that they would have been worth, at that time, $10,000, if the alley had not been obstructed by the railroad company. Some of the special findings of the jury do not seem to be entirely harmonious with their general verdict, or with their other special findings. Among their special findings are the following:

"4. Was said track through said alley constructed in a proper manner?

"A. In usual manner for railroad purposes.

"6. Since the laying down and construction of said track in said alley, has the defendant permitted cars to remain unreasonably and unnecessarily on said track?

"A. We don't know.

"8. If the plaintiff is entitled to recover herein, what damage is he entitled to as compensation for the use of the ground over which said track is located?

"A. None.

"9. If the jury find a general verdict for the plaintiff, what portion of the amount allowed to the plaintiff is awarded as compensation for the use of the ground over which said track is located?

"A. None.

"10. What amount of damage has the plaintiff sustained by reason of the defendant's permitting cars to remain unreasonably and unnecessarily on said track, since the 13th day of September, 1878, the date of the commencement of this suit?

"A. No damage.

"12. If the plaintiff has sustained any damage by reason solely of the laying down and construction of said track in said alley, did such damage accrue to the plaintiff by reason of his inability to use said alley for the purposes it had been used previous to the construction of said track?

"A. No.

"13. What was the value of the use of said alley to the property in controversy, just prior to the laying down and construction of said track therein?

"A. We don't know.

"14. If the jury find a general verdict for the plaintiff, what portion of said verdict is allowed plaintiff as the value of the use of said alley to the property in controversy?

"A. None.

"15. What amount of damage did plaintiff sustain prior and up to the 13th day of September, 1878, by reason of the construction of said track, so far as the same had been constructed in a legal and proper manner?

"A. No definite amount.

"16. What amount of damage did plaintiff sustain prior and up to the 13th day of September, 1878, by reason of the reasonable and necessary use of said track by the defendant?

"A. None.

"17. What amount of damage has plaintiff sustained since the 13th day of September, 1878, by reason of any unreasonable and unnecessary use of said track by defendant?

"A. None.

"19. What was the market value of the property in question just before the track was laid down in said alley in 1877?

"A. We don't know.

"23. Regardless of the fact whether said alley is obstructed or not, is the property of plaintiff as suitable and valuable for residence property as for other purposes?

"A. We do not know.

"29. Has the market value of plaintiff's property been affected by the running and operation of cars, engines and trains along and over said track?

"A. No.

"30. For several months previous to this date has defendant company in any manner used and operated said side-track?

"A. No.

"31. On or about January 1, 1880, did the defendant company cease to use and operate said side-track for any purpose?

"A. Yes.

" 32. What railroad company has used and operated said side-track since about January 1, 1878?

"A. Missouri Pacific railway."

There were several errors committed in this case, which we think will require a reversal of the judgment of the court below; for instance, evidence was admitted that ought to have been excluded, and evidence was excluded that ought to have been admitted. Sufficient latitude was not allowed the defendant on the cross-examination of the plaintiff's witnesses, and the court tried the case upon a wrong theory as to the measure of damages. The court refused to give the following instruction, which we think is good law, and applicable to the case:

"21. The jury are instructed that in estimating the value of plaintiff's property, their estimate must not be made upon the basis that it is residence property alone, but they must take into consideration the true market value of said property with reference to its capabilities."

See authorities cited in brief of counsel for plaintiff in error.

And the case was tried by the court below from beginning to end upon the erroneous theory, as we think, that the damages sustained by the plaintiff below are to be estimated upon the basis of the consequent diminution of

1. Damages, measure of, for obstruction of alley by railroad company.

the value of the plaintiff's property, caused by the obstruction of the alley *at the time of the trial,* and not upon any theory of the reduction of the value of his property, or of any injury thereto at any previous time.

This last-mentioned error is probably the most material one committed in the case; and it is the only one to which we shall give any further consideration. The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots, as a *quasi* condemnation and permanent taking and appropriation of a certain interest in his property; and he can therefore recover merely for the consequent depreciation in value of his property by reason of such permanent injury, by reason of such permanent taking and appropriation, by reason of such *quasi* condemnation.

He had the privilege to consider the obstruction of the alley as only a temporary injury, and to have sued for any special or temporary damage which might have occured at any time by reason of the obstruction.    But it seems he did not choose to so consider the obstruction; he chose to consider it as permanent; and, as he has chosen to consider it as permanent, and amounting to a permanent taking and appropriation of an interest in his property, he must be governed by the rules generally governing condemnation proceedings.    He must go back to the time when the property was actually taken and appropriated, and ascertain the amount of the injury which his property then sustained by reason of such taking and appropriation.    This we think is the universal rule applied in condemnation proceedings.    (*St. J. & D. C. Rld. Co. v. Orr,* 8 Kas. 420;  *Gulf Rld. Co. v. Owen,* 8 Kas. 410;  *Sherwood v. St. P. & C. Rly. Co.,* 21 Minn. 122, and cases cited; *Warren v. First Div. of St. P. & P. Rld. Co.,* 21 Minn. 424;  *Old Colony Rld. Co. v. Miller,* 125 Mass. 1;  *Pitkin v. City of Springfield,* 112 Mass. 509;  *Cobb v. Boston,* 109 Mass. 438;  *S. R. & D. Rld. Co. v. Keith,* 53 Ga. 178;  *Stafford v. The City of Providence,* 10 R. I. 567.)

The defendant in error, plaintiff below, seems to admit that the damages should be estimated in cases like this, as of the time when the plaintiff consents that his property shall be permanently appropriated by the railroad company; but he claims that he does not consent to any such appropriation until the judgment for such damages is rendered in his favor.    It seems to us that he gives his consent when he brings the action for such damages.    It seems to us that he then consents that the railroad company shall permanently appropriate his property in the alley, for he then brings his action for damages, *because of such appropriation;* and it seems to us that when he gives such consent, the consent must be considered as relating back to the time when the railroad company originally took the property.    If it does not, then the plaintiff would have an action for every special damage that he may have suffered during the intermediate space of time between the taking of the property

and the giving of his consent. If his consent does not relate back, so that the bringing of the action for the permanent injury to his property does not cover all intermediate special injuries, sustained after the property is taken and before he gives his consent, then he might have a large number of actions for special injuries, although he may have already sued and recovered for the general injury resulting from the original taking and appropriation. Besides, if the plaintiff should be allowed to have his damages estimated as though they had accrued at the time of the trial, he might recover more than his lots were actually worth at the time the alley was appropriated. Suppose that his lots were worth only $1,000 at the time the alley was appropriated, and suppose that the obstruction of the alley would injure the value of his lots at that time just one-fifth, thereby reducing their value to just $800; and suppose that the improvements made then and afterward by the railroad company and others should so enhance the value of the lots that at the time of the trial the lots would be worth $10,000 provided the alley was not obstructed; and suppose that the obstruction of the alley would still reduce the value of the lots just one-fifth, thereby reducing their value to just $8,000: his damages then would seem to be at the time of the trial just $2,000. Now if he should be allowed to recover this $2,000, he would recover twice as much as his lots were actually worth at the time the alley was first appropriated. This would not seem to be right. Can property worth only $1,000 be injured by a wrongful act to the extent of $2,000 ? The plaintiff in this case owned six lots, and the alley is only fifteen feet wide. Now when the alley was obstructed, he might have made a road-way fifteen feet wide all around his lots, except in front, where the street is located, and made his lots, except for the amount of land thus appropriated for his road-way, about as valuable as they were before the alley was appropriated; hence, it would seem that the plaintiff should not have the power to recover at any time for the obstruction of the alley twice the amount that his property was worth at the time of the obstruction. Whether the plaintiff's

lots have been increasd in value, or not, by the improvements made by the railroad company, we do not know. It would seem, however, that there are now eight or ten railroad tracks in the vicinity of the track that passes through the alley. And from this we might infer that the improvements made by the railroad company, and the improvements induced to be made by it, have materially enhanced the value of the plaintiff's property. And suppose further, that after the railroad company had appropriated the alley, the plaintiff should put costly improvements on his property which would not be of any value unless he could use the alley : then should he be allowed to recover damages as of the time of the trial, and for the full value of these costly improvements?

But it is not necessary to multiply arguments, nor to make suggestions, to show that the plaintiff should not recover damages as of the time of the trial; for, unless very strong reasons can be shown that he *should* recover damages as of that time, the rule governing as to the measure of damages in condemnation proceedings should prevail. It would not be justifiable to make distinctions or multiply rules for the measure of damages, where no sufficient reasons therefor exist. The defendant in error, plaintiff below, has not furnished us with any sufficient reason why the rule governing in condemnation proceedings should not govern in this case ; and no sufficient reason has occurred to us. One of the principal differences between the ordinary condemnation proceedings and this is, that in the ordinary condemnation proceedings the permanent interest in the property is taken by the other party without the consent of the owner, while in this case the owner consents that the permanent interest in his property may be taken.

We think that the plaintiff can recover only such damages as he sustained at the time the alley was taken and appropriated by the railroad company.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.