John Dowd, Appellee, v. Drainage District No. 1 in Harmon Township, Lee County, Appellant.

### Gen. No. 5411.

DRAINAGE—*when and to what extent district liable for land taken and damaged.*  A drainage district which widens a ditch maintained by it beyond the right of way which has been lawfully acquired, is liable to the owner of the land taken for the market value thereof. If such district in doing such work renders worthless other land of

the plaintiff for any purpose other than that of the drainage district, it is likewise liable for the market value of such land. If, however, the land not taken but damaged is rendered worthless to the owner the district is liable for the depreciation caused by it.

Action in trespass. Appeal from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

**Statement by the Court.** This suit as originally brought was an action in trespass. A demurrer having been sustained the declaration was amended changing the form of action to *assumpsit*. A demurrer to the declaration as amended was overruled, and defendant abiding by its demurrer, evidence was heard and a judgment rendered for plaintiff for $472.50. This court reversed that judgment and remanded the case with instructions to sustain the demurrer. 132 Ill. App. 499. Upon the transcript of the order of this court being filed in the trial court, the plaintiff again amended the declaration, by changing the form of action to trespass on the case.

The present declaration contains four counts on which issues were joined. The first count avers that the defendant is a corporation organized under an act entitled ''An act to provide for drainage for agricultural and sanitary purposes,'' approved June 27, 1885, in force July 1, 1885, for the purpose of draining the lands within the territory over which it had jurisdiction, and had constructed a ditch across the lands of the plaintiff, describing the land and the course of said ditch; that in May, 1905, it became the duty of defendant to deepen and widen said ditch to a depth of seven feet and a width of at least fourteen feet at the bottom; that across the land of the plaintiff, a distance of 4,120 feet, the defendant in pursuance of its duty deepened said ditch and widened it to a width varying from 36 to 46 feet and deposited the excavated material on the land of plaintiff; that in widening said ditch and depositing such material, defendant took possession of eight acres of plaintiff's land not before

occupied or claimed by it and exercised ownership over it, and thence hitherto continued and intends to continue such acts for the purpose of drainage of the lands of the district, whereby upon rendering compensation, it would own the right of way and land on which such material was deposited for the purpose of drainage; that the defendant in 1904, prior to such improvement, caused an assessment to be levied on the lands in the district to raise sufficient money to pay for such proposed improvement; that by the acts of the defendant in widening said ditch and depositing such material on the banks thereof the land of plaintiff was damaged in the sum of $1,000.

The second count contains similar averments to the first and also an averment that by writ of *mandamus,* issued prior to such acts of the defendant, it was commanded to enlarge said ditch to certain dimensions, and that the acts of said defendant were done pursuant to such writ. The third count is a count in trespass. The fourth count is very similar to the second, with an averment that it was unlawful for defendant to take possession of plaintiff's land without first rendering compensation, but in consideration of such compensation and damages as may be awarded, plaintiff waives all damages accruing by reason of the failure of the defendant to first make compensation, and demands, in lieu thereof, the market value of the land so appropriated for the use aforesaid by reason of such excavation and deposit of material, and consents to such use and occupancy. After the overruling of a demurrer, the defendant filed the general issue; upon which issue was joined. Upon a trial a verdict for $308.70 was returned in favor of plaintiff, upon which judgment was rendered and the defendant appeals.

BROOKS & BROOKS, for appellant.

A. C. BARDWELL, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellant had constructed a drainage ditch across the lands of appellee. In 1895, appellant had enlarged and deepened the ditch after making an assessment for that purpose; still the ditch was not of sufficient capacity to carry off the waters from the district. Subsequently upon a petition of landowners in the district, a writ of *mandamus* was awarded commanding the commissioners of the district to deepen the ditch to an average depth of seven feet, and to widen it to a width of twenty feet at the bottom with a slope in said bank of one foot to each foot in depth. The district made an assessment for that purpose on the lands of the district which embraced the land of appellee. The predecessor in title of appellee had deeded to the district a strip thirty-two feet in width in which the original ditch had been excavated. In 1905 the officials of the district, in pursuance of the writ of *mandamus* but without taking any steps to secure an additional right of way, enlarged the ditch by deepening and widening it and deposited the excavated material on the banks of the ditch upon the land of appellee.

This suit was brought by appellee to recover the value of the land owned by him that has been appropriated for the use of the district. Appellee asserts (1) that appellant excavated the ditch beyond its original right of way thus placing a part of the ditch upon appellee's land outside the right of way, and (2) that it dumped the material taken from the sides and bottom of the ditch upon his land outside the right of way ruining for farming purposes that part of his land upon which such material was placed, so that such land was thereby appropriated for the purposes of the district. The evidence on the part of the appellee shows that the ditch is nowhere less than forty feet in width, and in some places it is forty-eight feet wide, and that in many places since the work was done

the banks had caved into the ditch; that a strip of land on each bank of the ditch varying in width from twenty to thirty-nine feet, is covered with excavated material, consisting of dirt, clay, sand, gravel and nigger heads varying in size up to that of a water bucket, to a depth of from three to seven feet in irregular heaps, and that such deposit renders the land worthless for farming, and that to spread it out over the adjoining land would damage other good ground. It appears that the width of the strip used by the ditch and the spoil banks is about one hundred and four feet and of this the spoil banks cover over five and three fourths acres. Appellee's evidence also shows that the land at the time the work was done was worth from $75 to $80 per acre. Appellant's evidence tends to prove that it did not excavate beyond the limits of its original right of way, and that the land where the spoils are deposited is not entirely worthless, but that it might be leveled down and in time would produce some pasturage. The appellant has the greater number of witnesses, but many of appellant's witnesses were interested in the result of the suit adversely to appellee, while the evidence of disinterested witnesses called by appellee appears to preponderate in favor of his contention that the land is rendered useless for any purpose by the spoil banks, and the measurements as to the width of the ditch show beyond a doubt that the ditch alone is ten feet wider than appellant's right of way.

"The entry upon land and the construction of a ditch for drainage purposes constitutes, in law, a taking and appropriation of a perpetual easement and interest in the land, which is protected from invasion even as against the owner of the land." Ginn v. Moultrie Drainage District, 188 Ill. 305. It was said in C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203, an action for damages caused by a lawful structure: "By instituting this action for damages, the lot owner, in effect, consents that the railroad company may continue for all future

time to use the street as it is now using it, and as consideration therefor to accept such judgment as may be therein rendered. In C. B. U. P. R. R. Co. v. Andrews, 26 Kan. 702, an action to recover damages for interference with an alley, it is said by the court, upon this point: 'The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots, * * * as a quasi condemnation and permanent injury and appropriation of a certain interest in his property * * * It seems to us that he gives his consent (that his property shall be permanently appropriated) when he brings an action for such damages. It seems to us that he then consents that the railroad company shall permanently appropriate his property in the alley, for he then brings his action for damages because of such appropriation.' In Fowle v. N. H. and N. R. R. Co., 112 Mass. 334, where the action was for damages caused by the building of a railroad in such a manner that at times the current of a certain stream would be thrown upon the plaintiff's land, the court says: 'And if it (injury) results from a cause which is either permanent in its character, or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and probable future injury.' And see Town of Troy v. Cheshire Railroad Co., 3 Foster (N. H.) 83; Powers v. City of Council Bluffs, 45 Iowa 652; Kansas Railroad Co. v. Mihlman, 17 Kan. 224.''

This was approved in K. & S. R. R. Co. v. Horan, 131 Ill. 288, and Strange v. C. C. C. & St. L. Ry. Co., 245 Ill. 246, and cases cited therein. Appellant, before beginning the improvement, should have condemned the land it desired to appropriate. It should not now be permitted to say that it was only taking possession of appellee's land for a limited purpose, a proposition it could not have urged in a condemnation suit for the purposes of the drainage ditch. If the land is, as claimed by appellee, destroyed for any purpose for which it could be used other than for the depositing

of the excavated material, as appellee's proof tends to show, then he is entitled to recover its market value.

It is contended by appellant that the court erred in refusing to admit in evidence the original assessment proceedings in the organization of appellant in 1880. These proceedings had no bearing on any issue in the case. They could in no way tend to give any light on the question whether appellant went beyond its right of way in excavating the ditch or depositing the spoils, and could have had no other effect than to tend to confuse the jury.

It is also insisted that the court erred in giving instructions requested by appellee. Instructions were given at the request of appellee concerning the measure of damages on the theory of appellant that the land covered by excavated material was not rendered worthless,—that appellee was entitled to recover the market value of any land appropriated outside the right of way and used in the ditch, if any was proved, and damages to any land damaged, if any, by the deposit of excavated material upon land of appellee adjoining the right of way. It was a question of fact for the jury whether the land was only damaged in value or was rendered worthless to such an extent that it was appropriated by appellant. The measure of damages would be different in the two cases. The jury were also instructed that if the jury believed from the evidence that the appellee was deprived of the use of any portion of his land adjoining the right of way, either by widening the ditch or depositing material on its banks, so that such land was destroyed for farming purposes, then appellee was entitled to recover the market value of the land so taken, and that the district would have the right to maintain the ditch forever within the space occupied by it and the excavated material. The limitation by the instruction to the destruction of the land for farming purposes, technically was improper; it should have been that the

SECOND DISTRICT—MARCH, 1911.     483

land was made valueless for any other purpose than the purposes of the district. This however could not have misled the jury. The evidence fully warranted the verdict and the damages awarded appear to be low for the injuries sustained. Under the evidence in the case no verdict or judgment except one in favor of appellee could be sustained. It is apparent substantial justice has been done, and in such case the judgment should not be reversed for slight error in instructions. Beseler v. Stephans, 71 Ill. 400; Young v. McConnell, 110 Ill. 83; Heckle v. Grewe, 125 Ill. 58; Keeler v. Herr, 157 Ill. 57. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*