H. R. HUBBARD, *Appellant*, v. THE SPRING RIVER POWER
· COMPANY, *Appellee.*

No. 18,059.

SYLLABUS BY THE COURT.

1. WATERCOURSE—*Dam—Overflow—Damages—When Action Accrues.* Where lands are subject to overflow by reason of the erection and maintenance of a dam permanent in character, the owner who has not been compensated for the appropriation of his lands may, if he see fit, maintain an action to recover all damages occasioned to the lands, present and prospective, and such cause of action accrues at the time of the appropriation.

2. ——— *Former Adjudication—Plea of Res Judicata.* The owner of lands adjacent to a dam erected as a permanent structure sued to recover damages to the lands by reason of their being subject to overflow. The answer set up the record and proceedings in a former action between the same parties wherein the plaintiff recovered damages to the land caused by the erection and maintenance of the dam. *Held,* that the facts pleaded constitute a good defense of *res judicata* and that a demurrer to the answer was rightly overruled.

Appeal from Cherokee district court. Opinion filed April 12, 1913. Affirmed.

*Edwin B. Morgan,* and *Truman T. Burr,* both of Galena, for the appellant.

*William F. Sapp,* and *Andrew S. Wilson,* both of Galena, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from an order overruling a demurrer to an answer. The purpose of the action is to recover damages alleged to have been sustained by appellant's lands being flooded by reason of the erection of a dam in Spring river by the appellee.

The only question involved in the appeal is, Was the judgment rendered in appellant's favor in a former action a bar to the present one? In overruling the

demurrer the court held that the answer set up a good defense of *res judicata.* The answer set out copies of the pleadings, instructions, verdict and special findings and all the proceedings in the former action except the evidence, and in addition alleged that the matters involved herein were fully determined in' the former action.

From the answer it appears that the parties to the former action were the same; that in the first, second and third causes of action the petition set up a claim for damages to the crops of 1906, 1907 and 1908, respectively, by the erection of the dam in question and by keeping the gates of the dam closed and thereby flooding the lands. The fourth cause of action was stated as follows:

"That by reason of the frequent flooding of said land caused by the erection of said dam and the insufficiency of the flood gates therein, and the failure to raise the same and by reason of the building of the obstruction near the section line between section 19 and section 20 of Garden township, Cherokee county, Kansas, the said land has been damaged in the sum of not less than $100 per acre, and that the damage by reason thereof to this plaintiff has been the sum of $8,000."

The petition in the present case contains three counts, the first and second being for damages caused to the crops of the years 1909 and 1910 respectively. The third reads:

"Plaintiff further states that the said defendant has been, during all the years hereinafter complained of, maintaining, still maintains and threatens in the future to maintain the obstruction or dam across Spring river, and refuses and will refuse to open the flood gates therein sufficiently to let the water escape there through; and maintains and threatens in the future to maintain the concrete and steel structure on or near the Section line between Section Nineteen and Section Twenty. That such dam and obstructions are a constant menace to the land of this plaintiff in that such a head of water is thereby maintained that in times

of ordinary high water the land of plaintiff is liable to and does overflow and become flooded; and that, by reason thereon, plaintiff is unable to lease or let his lands to tenants for farming purposes; and that, by reason thereof, the production of crops on said land will be in the future materially diminished, all to the plaintiff's damage in the sum of Eight Thousand Dollars ($8000.00)."

The answer in both actions admitted the erection of the dam, that it was of reinforced concrete, and permanent in character; and that appellee had not acquired by condemnation the land necessary for use as a dam or the right to flood adjacent lands. The answer in the present case shows that in the first action the court submitted to the jury the issue raised by the fourth count of the petition, and gave the following instruction:

"You are instructed that the measure of damages to the real estate or that applicable to the fourth count in the petition is the difference between the value of the land damaged immediately before the same was damaged and its value immediately after said damage and injury, if any."

It further shows that the jury returned a general verdict in favor of the plaintiff (appellant) for $710, and after finding the damages to the crops of 1907 and 1908 to be respectively $210 and $250, made the following special finding:

"3rd. How much do you allow plaintiff, if anything, as damages for injury to land as claimed in his fourth cause of action. Answer, Two Hundred Fifty Dollars ($250.00)."

It is not claimed that appellee erected any other dam than the one involved in both actions. The parties are identical, and the purpose of the present action is to recover damages to the land caused by the erection and maintenance of the dam. It is plain from the petition and answer in the former action as well as from the pleadings in this that the dam was erected as a per-

manent structure and was intended to be used as such; and further, that in order to operate it successfully it is necessary to keep the gates closed. The appellant's land having been appropriated without compensation to him he had a choice of several remedies. The appropriation being permanent in character, he could sue to recover for permanent damages. (*W. & W. Rld. Co. v. Fechheimer,* 36 Kan. 45, 48, 12 Pac. 362.) . The question is, Did he elect to do this in the former action? In support of the contention that he did not so elect, some stress is laid upon the language of the fourth count of the petition in the former action, in which it was alleged that the land "has been damaged in the sum of not less than $100 per acre"; and it is sought to distinguish the cause of action from this, because in the latter the allegation is that by reason of the erection and maintenance of the structure the damages to the land "in the future" will amount to $100 per acre.

In the Fechheimer case, *supra,* land was taken for railway purposes. It was held that the nature, use and design of the railroad being permanent in character, the landowner might elect to sue for all present and future damages, and that the manner in which she conducted her suit, the character of the testimony offered, the rulings of the court and instructions given in regard to the measure of damages indicated that she was seeking to recover for the entire injury, present and prospective. For the same reasons it is equally clear that appellant by his former action submitted his claim for all injury to the land, present and prospective. The instruction given in respect to the measure of damages under the fourth cause of action could only have been pertinent upon the theory that evidence was offered of the value of the land immediately before and immediately after the dam was constructed.

In *C. B. U. P. Rld. Co. v. Andrews,* 26 Kan. 702, the action was for damages to certain city lots occasioned

29—89 kan.

by the appropriation of land for railroad purposes without condemnation proceedings and without compensation to the owner. It was ruled that the latter might elect to consider the obstruction as a permanent appropriation and sue for his permanent damages, and that the measure of such damages was the injury to his lots at the time the appropriation was made and not at the time of the trial of the case. So here, the permanent injury to appellant's land by its appropriation for use in connection with the erection and maintenance of the dam was occasioned at the time of the appropriation. In setting up his claim of damages he could not, by the mere use of the past perfect tense of the verb, split his cause of action into several actions.

In the case of *Brock v. Francis,* post, p. 463, the husband sued to recover for the loss of his wife's services resulting from an injury alleged to have been caused by defendant's negligence. The action was not begun until more than two years after the injury to the wife. To avoid the defense of the statute of limitations plaintiff claimed that the injury to the wife did not result in depriving him of her services until some months after the accident to her, and therefore that the statute did not begin to run until he sustained damages by the actual loss of her services. It was held that the two years statute barred his action; and it was said in the opinion that:

"He could have sued the next day . . . for his loss of services and expenses which he could show he was to suffer by reason of the injury to his wife." (p. 464.)

It would be somewhat difficult to imagine a clearer instance of a thing fully determined and adjudicated than the matter of appellant's damages arising from the construction of the dam and the consequent appropriation of his land. Moreover, the averments of the answer are that the question of permanent damages to the land was, in fact, fully submitted and determined

in the former suit, and if the record set up in the answer had not conclusively established the fact, the demurrer was rightly overruled for the reason that it was competent for appellee to show by oral evidence what was in fact submitted and determined in that action.

It becomes wholly unnecessary to review the numerous decisions upon the question of when a judgment is *res judicata.* The answer set up a record from which it appears not only that the question of permanent damages to the land might have been litigated in the former suit, but that it was litigated and fully determined.

It follows that the judgment is affirmed.