No. 20,729.

ROBERT J. CAMPBELL and HATTIE R. CAMPBELL, *Appellants,* v. THE WICHITA UNION TERMINAL RAILWAY COMPANY, THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, and THE CITY OF WICHITA, *Appellees.*

SYLLABUS BY THE COURT.

1. DAMAGES — *Claim Against City — No Statement Filed Within Four Months—Action Barred.*  An action against a city of the first class for damages for obstructing a property owner's ingress and egress can not be maintained without first filing the statement required by section 1460 of the General Statutes of 1015.

2. SAME—*Obstructing Ingress to City Lots—Action Barred by Statute of Limitations.*  When the street, by means of which a property owner has ingress to and egress from his property, is by ordinance vacated for the benefit of railroad companies for the purpose of constructing thereon an elevated structure for railroad tracks to a union station, and such ordinance has been accepted by the beneficiaries, and the work of construction begun, and the city has put up a sign "Street Closed, Ordinance No. 4066," *held* that a cause of action has accrued for the permanent appropriation of such means of ingress and egress and the two-year statute of limitations has begun to run.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge.  Opinion filed November 10, 1917. Affirmed.

*Frank Nighswonger, Kos Harris,* and *V. Harris,* all of Wichita, for the appellants.

*W. R. Smith, Owen J. Wood,* both of Topeka, *R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, Robert C. Foulston,* and *O. A. Keach,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiffs sued to recover damages for closing up Third street in the city of Wichita across and south along Santa Fe avenue, thereby obstructing their ingress and egress to and from certain real estate owned by them. A demurrer to their evidence was sustained and they appeal.

Santa Fe avenue, formerly Fifth avenue, running north and south, is intersected at right angles by Third street. At the southeast corner of this intersection the plaintiffs' two lots are situated, fronting substantially on Third street on the north and Santa Fe avenue on the west. The allegations contained in the second amended petition and necessary to be noticed are that Third street had for more than thirty years been a public thoroughfare and highway, and had been established and recognized by the city as such; that prior to the first day of March, 1913, the Santa Fe railway had occupied and used most of Fifth avenue for many years as its right of way, and had laid and maintained several tracks thereon; that two plats of certain additions left a small unplatted wedge between the west boundary of plaintiffs' lots and the east boundary of Santa Fe avenue, and extending north, but that Third street across this strip was used openly and notoriously and adversely, and had been recognized by the city and worked as a street for more than thirty years; that the terminal and Santa Fe companies had taken up Fifth street with an elevated structure or incline leading to the union station several blocks south of the plaintiffs' property, including a concrete wall about seven feet high on a secure foundation built across Third street on a line with the west line of the plaintiffs' property,

"thereby leaving to the said plaintiffs the only means they had of reaching the main portion or body of the business portion of the city of Wichita by going east to Mead avenue . . . and thence south along said tracks to Second street or Douglas avenue,"

or through an irregular alley with jogs in it east of their property. It was further alleged that the city, by ordinance, assumed the burden of the damages resulting from such use of Santa Fe avenue, and by section 16 thereof vacated that portion of Santa Fe avenue crossed by Third street.

The city pleaded, among other things, the failure of the plaintiffs to file a claim for their damages within four months, and the two-year statute of limitations. The Santa Fe answered, among other things, that it owned the right of way it was using upon Santa Fe avenue, and had acquired the same by deed of conveyance, and that its tracks thereon had been constructed and operated continuously for more than twenty years prior to April 23, 1911, by its grantor and itself, and that on the 12th of May, 1911, it had conveyed to the Terminal company certain parts of this right of way, which company had constructed the elevation thereon. It also pleaded the two-year statute of limitations. The Terminal company pleaded, among other things, this statute.

Assuming without deciding that the plaintiffs' egress and ingress had been so obstructed as to entitle them to damages, if sought in time, and that such egress and ingress were thus obstructed by vacating and elevating Third street, it remains to be considered whether they are barred by the statute requiring the filing of claims within four months, or by the statute of limitations, so that the court rightly sustained the demurrer to their evidence.

Before discussing this it may be said that whatever the fact may be as to the wedge on the west of the plaintiffs' property, and the claim that their lots were not contiguous to Santa Fe avenue at the intersection with Third street because of the continuation of such wedge north across Third street, we have no difficulty in concluding that all of Third street in that vicinity, including the alleged wedge, if any, on the east side of Santa Fe avenue, was abundantly shown by the evidence to have been for many years used, treated and recognized in all respects as a street, and must be so regarded now.

The plaintiffs insist that the city is estopped to avail itself of their failure to file a notice of their claim for damages, and say that the nature of the injury to the property of the plaintiffs is permanent, and the conditions created under the city's own act and ordinance have become a permanent monument visible and apparent to the eye of the citizen of to-day; that the city by its own ordinance described the kind of obstruction to be placed in the street and helped to place it there; that it

anticipated claims for damages by providing in its ordinance for a board of appraisers to hear and determine damage claims, and they cite *Ritchie v. The City of Wichita*, 99 Kan. 663, 163 Pac. 176. There a taxpayer enjoined the city from acting upon an insufficient petition of abutting property owners to let a paving contract, and it was held that the statute in question did not apply to the circumstances of that case. The statute (Gen. Stat. 1915, § 1460) provides that no action can be maintained for damages on account of the injury to person or property unless within four months thereafter the one injured file with the city clerk a written statement "giving the time and place of the happening of the accident or injury received, and the circumstances relating thereto." It is plain from this language that the object of the statement is to apprise the city of the place and circumstances of the injury. It is difficult to see how the city, which enacted the ordinance and stood sponsor for the work of barricading Santa Fe avenue from approach on the east for the purpose of the important enterprise of building a union station, would have received information of any possible benefit by any notice or claim which the plaintiffs could have filed except the mere warning that they intended to bring a lawsuit. However, the statute expressly prohibits the maintenance of an action without filing a claim, and such prohibition is not beyond the legislative power, and we are not authorized to nullify its action in this regard. Even in the situation here presented, the timely filing of the claim might have called the city's attention to demands of which it had no notice and enabled it better to prepare for resisting an action than silence on the part of the property owner would have done. It is but fair to require one intending to sue the municipality in which he lives or owns property to give four months' notification of any demand which may ripen into an action, and while in this instance the reasons which ordinarily go to make the filing of the statement practically as well as technically necessary are wanting, the prohibitive and jurisdictional nature of the requirement nevertheless remains. It appears that a statement was in fact filed, but not until April 10, 1914. As will be more fully shown herein, this was too late. It is held, therefore, that the plaintiffs can not recover against the city on account of the

failure to file the statement as required by the statute referred to.

Of course there can be no recovery in this case unless the action was brought within two years from the time when the cause of action accrued. (Civ. Code, § 17, Gen. Stat. 1915, § 6907.) The pivotal question therefore is, When did the cause of action accrue? Attention is called to the admission of the city that all travel on Third street east of the tracks and west of the tracks was closed about Ocober 1, 1912, and to the testimony of one witness that the entire travel on Third street was obstructed September 9, 1912. All of the defendants argue that as the ordinance not only provided for a change of grade but vacated a portion of the street and provided for appraisers to fix the damages, the cause of action accrued when the ordinance vacating the street took effect. This was April 4, 1911, and the city contends that the statute began to run on April 5, when the ordinance was accepted. The action was begun September 10, 1914. This ordinance, as already suggested, not only vacated but "vacated and closed for the use and benefit of said railway company" that portion of Third street forming the intersection with Santa Fe avenue. Upon the enactment and acceptance of the ordinance the intersection was no longer a street, as said in *Tomlin v. Railway Co.,* 141 Iowa, 599:

"And, when a street is properly vacated, it ceases to be a street. . . . And, when a street ceases to be public by reason of its vacation, it is private property within the meaning of the law, and a road located thereon does not entitle an abutting owner to damages." (p. 601.)

While there is some dispute in the testimony as to just when the legal barricade constituted by the ordinance and its acceptance was reënforced by an actual physical obstruction, there seems to be no dispute that on September 9, 1912, the actual work was begun and a sign put up and the street marked "Street closed, Ordinance No. 4066." This was a permanent appropriation and the subsequent completion of the superstructure simply added a physical to the legal barrier. At this point of time, when, the ordinance having been enacted and accepted, the actual work of constructing the barrier was begun and the public were notified by the posting up of a sign that the street was vacated, the plaintiffs' cause of action accrued. They could

not, after this, use the intersection for the purposes of ingress and egress without becoming trespassers, without ignoring the warning sign, or without interfering with the actual work of construction. They were not compelled to wait until the work was completed before asking the court for damages, but they had a right to go on the assumption that the use of the intersection had been permanently denied them. The amount of damages was just as patent and susceptible of proof then as at any subsequent time, and for all legally practical purposes the property in question might as well have been bounded on the north and west by the Grand Canyon. In *Hempstead v. The City of Des Moines*, 63 Iowa, 36, 18 N. W. 676, it was held that where the grade of a street has been lowered from curb to curb in such a manner that a corresponding change in the level of the sidewalk must inevitably follow, a clear cause of action arises at once in favor of the abutting owners for the full amount of damage; and recovery of damages for change of the grade of a driveway is a bar to any further action on account of the grading of the sidewalk. In the opinion, Rothrock, C. J., said:

"The excavation at the corner of plaintiff's lots, at the intersection of Walnut and Tenth streets, was about six feet. This change in the surface of Walnut street made a corresponding change necessary in Tenth street, at the point of intersection. It also required the plaintiff's sidewalk to be lowered to correspond with the change made in the surface of the street. Either such a change must follow, or travel from Tenth to Walnut street must cease. If Tenth street should be lowered at the point of intersection, plaintiff's sidewalk must either be lowered, or access to it from the intersection must be by means of a stairway six feet in height. . . . In our opinion, the change in the surface of Walnut street to the new grade, and the change of the sidewalk to correspond thereto, were parts of the same act, and that the damages thereto were indivisible, and were all recoverable in one action, although the work was not completed when the former action was brought." (p. 39.)

In *K. P. Rly. Co. v. Mihlman*, 17 Kan. 224, it was ruled:

"Though from a completed wrong there afterward results new and unforeseen injury, there does not arise a new cause of action; and if a recovery has been had for the wrong prior to the occurrence of the new injury, no recovery can be had for such injury." (Syl. ¶ 4.)

The cause was one for damages for trespassing by digging a ditch on the plaintiff's land. In the opinion the court, speaking through Brewer, J., said:

Campbell v. City of Wichita.

"True, the trespass has now resulted in greater loss than was then foreseen or estimated in assessment of damages; but an increase in the damages resulting, adds no new cause of action. . . . So, for the trespass, the cause of action is complete at the time, and an increase in the resulting damages gives no new cause of action. There are cases, it is true, in which the cause of action is based upon the actual occurrence of damage, and dates therefrom, and not upon or from the prior act which resulted in the damage; but these are all cases in which the prior act is itself lawful, and furnishes no cause of action, or where it is considered as a continuing act; as, where one excavates on his own land, and thereby withdraws the lateral support to his neighbor's soil and buildings, the act is itself lawful, and only becomes the basis of a cause of action for damages when it actually results in injury; and the cause of action dates, not from the time of the excavation, but from the time of the subsidence." (p. 228.)

In *C. B. U. P. Rld. Co. v. Andrews*, 26 Kan. 702, it was held that—

"Where a railroad company obstructs an alley in a city, by building a railroad track through the alley, so as afterwards to make the alley useless as an alley, an abutting lot owner has the right, if he chooses, to consider the obstruction as a permanent taking and appropriation. . . . (Syl. ¶ 1.)

In *Parker v. City of Atchison*, 58 Kan. 29, 48 Pac. 631, it was held that where a permanent improvement is made by a city on the bank of a watercourse in such a way as to narrow the channel and injure private property on the opposite bank, an action therefor can be brought only within two years after the erection of such improvement. (Syl. ¶ 4.) In *Hubbard v. Power Co.*, 89 Kan. 446, 131 Pac. 1182, it was held that damages by the erection of a dam, permanent in character, causing overflow to the plaintiff's land accrued at the time of the appropriation. In *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899, the action was one to recover for permanent injuries to plaintiff's land by the pollution of a creek which ran through it. In the opinion it was said:

"As the sewer system constructed by the city and the refinery constructed by the oil company were permanent in their nature and as the flow of the sewage and refuse from them was designed to continue indefinitely in the future a cause of action for permanent damages arose when the sewage and other impurities were first emptied into the stream." (p. 43.)

(See, also, *Marshall v. Railroad Co.*, 96 Kan. 470, 152 Pac. 634, and cases cited; *Hardesty v. Ball*, 43 Kan. 151, 23 Pac.

937; *Railroad Co. v. Schwake,* 70 Kan. 141, 78 Pac. 431; and Note, 3 A. & E. Ann. Cas. 123.)

It is held, therefore, that for the reasons indicated the action is barred and the order sustaining the demurrer to the plaintiff's evidence is affirmed.