No. 27,901.

JOHN NELSON et al., *Appellees,* v. THE CITY OF OTTAWA, *Appellant.*

(264 Pac. 1049.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Damages for Obstruction of Ingress and Egress— Necessity for Statutory Notice of Injury.* An action against a city for damages for obstruction of a property owner's ingress and egress cannot be maintained without first filing a written statement giving the time and place of the happening of the accident or injury received and the circumstances relating thereto, as required by R. S. 12-105.

2. SAME—*Special Findings.* In an action such as above described, the findings of the jury considered and held to require a judgment for the city.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed March 10, 1928. Reversed.

*J. L. Shelden* and *W. B. Pleasant,* both of Ottawa, for the appellant.

*C. A. Smart,* of Lawrence, and *Wilbur S. Jenks,* of Ottawa, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for obstruction of ingress and egress to plaintiffs' property. The plaintiffs prevailed, and defendant appeals.

The controversy involves the question of the giving of the statutory notice of plaintiffs' claim for damages. The statute (R. S. 12-105) provides that no action shall be maintained against any city on account of injury to person or property unless the person or corporation injured shall, within three months thereafter and prior to the bringing of suit, file with the city clerk a written statement, etc., relating thereto. The city began the construction of a bridge over the Marais des Cygnes river in the fall of 1925. Plain-

Highways, 29 C. J. p. 548 n. 72. Municipal Corporations, 43 C. J. pp. 1184 n. 26, 1196 n. 67, 1201 n. 23; 50 L. R. A. n. s. 174; 19 R. C. L. 1041.

Nelson v. City of Ottawa.

tiffs claimed that when constructed the north end of the bridge destroyed the ingress and egress to their property which abutted on the main street of the city. Their notice or claim for damages was filed with the city June 18, 1926.

Special questions pertinent to this discussion were answered by the jury as follows:

"1. Are plaintiffs prevented by any act proven to have been done by the defendant city from having access on and over Main street to their property? A. No.

"2. Have plaintiffs been prevented from having access to their property by any change in the grade of Main street; and if so when was the change made? A. No.

"3. Is it not a fact that during the progress of the work on the new bridge and more than three months before June 18, 1926, that by reason of excavations in the street near the plaintiffs' property and a walk built from the lot line of sidewalk out into the street to the old bridge and a temporary bridge from the north end of the old bridge extending northward in the street and a fence or other barrier in the street north of plaintiffs' property, that the street was so obstructed that cars, trucks, wagons or other vehicles could not be driven on Main street to plaintiffs' property? A. Yes.

"4. Did not such obstructions in Main street remain there continuously from the time they were first created until the time of placing the barricade or obstruction from the northwest corner of the new bridge to plaintiffs' building? A. Yes.

"5. Did not such barricade consist of reënforcing rods projecting upward from the concrete wall on which the permanent concrete railing rests with boards or other timbers fastened horizontally to said rods about . . . feet high? A. Yes.

"6. Did not said barrier remain there in that position until the time of constructing the permanent concrete railing at said place? A. Yes.

"7. Did the city place any obstruction in Main street within the three months just before June 18, 1926, that permanently cut off or destroyed the ingress to and egress from plaintiffs' lots on said street? A. No.

"8. If you allow the plaintiff any damages in this case then state for what obstructions in the street, work done or acts done by the city that the damages are allowed. A. That portion of handrail of bridge which impairs a perfect access to Nelson building."

The plaintiff contends that finding No. 7 means that the barriers which were placed in the street more than three months before June 18 were only temporary and that plaintiffs could not determine their entire damage until the bridge was completed.. The findings must be construed together. Findings 4, 5 and 6 are directly connected up with finding No. 3. It will be noted that finding No. 5 is to the effect that the barricade consisted of reënforcing rods pro-

jecting upward from the concrete wall on which the permanent concrete railing rests, with boards or other timbers fastened horizontally thereto. The findings show that these barriers were placed on Main street more than three months before the filing of the notice; that they remained continuously until the time of the construction of the concrete rail; that they were in the same place and constituted as much of a barrier as the completed railing. Unquestionably the temporary barrier was of a character indicating to anyone the nature and extent of the obstruction. The jury, however, found that the only damages were from the erection of the handrail, and this does not permanently destroy ingress and egress to plaintiff's property. The finding really is that a portion of the handrail impairs a perfect access to the Nelson building. Outside the question of notice, it is extremely doubtful whether the impairment of a perfect access is a substantial ground for damage. (*Barker v. Publisher's Paper Co.*, 78 N. H. 571, 103 Atl. 757; 29 C. J. 547.) However, that question need not be decided. There was evidence showing that plaintiffs had filed an injunction suit against defendant and that the permanent handrail was not constructed until after the dissolution of the injunction which occurred July 28, 1926. It is perfectly apparent that the damages found by the jury were not for any injury concerning which plaintiffs had given the city the statutory notice. If the notice of June 18 referred to the temporary barriers, it was, according to the evidence and the findings, filed too late. On the other hand, it cannot be said to have referred to the permanent handrail for the reason that the construction of the permanent handrail did not occur until more than a month after the filing of the notice.

Reference is made by plaintiffs to a claim for damages made to the city April 27, 1926. It appears, however, that this was a letter written by plaintiffs to the mayor and commissioners, proposing a compromise of the differences between plaintiffs and the city. It could hardly be said to meet the requirements of the statute as to notice. It was not filed with the city clerk as the statute requires, and perhaps was not sufficiently definite to meet the statutory requirements. The notice of June 18 appears to have been the only one concerning which there is real contention.

Similar questions were considered in *Campbell v. City of Wichita,* 101 Kan. 817, 168 Pac. 833; *McHenry v. Kansas City,* 101 Kan. 180, 165 Pac. 664; *Dechant v. City of Hays,* 112 Kan. 729, 212 Pac. 682;

*Haggard v. Arkansas City*, 116 Kan. 681, 229 Pac. 70, and require no further elucidation. The statute requiring a written notice to be filed with the city clerk is not a great burden to put on one claiming damages from a city, and must be complied with. It is clear that no notice was filed as required by the statute within three months following the injury and before the filing of the suit.

The judgment is reversed and the cause remanded, with instructions to enter judgment for the defendant.