No. 47,353

SOPHIA WITTKE and FRANK W. WITTKE, *Plaintiffs-Appellants,* v. JAMES A. KUSEL, BURL AYERS and BILL FRANKLIN, individually and as members of the BOARD OF COUNTY COMMISSIONERS OF SMITH COUNTY, KANSAS, and the BOARD OF COUNTY COMMISSIONERS OF SMITH COUNTY, KANSAS, *Defendants-Appellees.*

(524 P. 2d 774)

*Jerry L. Harrison,* of Beloit, argued the cause, and *Don W. Noah,* also of Beloit, was with him on the brief for the appellants.

*James R. Fetters,* county attorney, argued the cause and was on the brief for the appellees.

The opinion of the court is delivered by

FONTRON, J.: This action is in the nature of an inverse condemnation. The plaintiffs are Sophia and Frank W. Wittke. The defendants are Smith County, Kansas, and the individual members of the Board of County Commissioners of that county. They will collectively be referred to either as the county or as defendants.

The Wittkes own a twenty acre tract of land described as the North Half (N ½) of the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section Twelve (12), Township Five (5) South, Range Fourteen (14) West of the Sixth (6th) Principal Meridian, Smith County, Kansas. It is bounded on the east by a county highway which originally was laid out as a sixty foot road.

On June 23, 1969, the county began widening the road by ten feet. To this end a five foot strip of land was added to each side of the existing sixty foot roadway. A five foot strip along the east side of the Wittke property for a distance of approximately 660 feet was included in the widening project.

Mr. and Mrs. Wittke asked to be paid for the five foot strip along their place and when payment was refused they commenced this lawsuit to recover the damage which they claimed resulted to their

property from the taking. They estimated the amount of their damages at $3000. The case was tried to a jury which returned a verdict in favor of the defendants. The Wittkes have appealed.

In their petition the plaintiffs alleged they were the owners of the twenty acre tract and that the defendants had appropriated a portion of their property lying along the east side of the tract. This allegation, among others, was denied by the defendants and the issue was joined as to whether the plaintiffs owned the 5 foot strip taken for road purposes, it being contended by the county that in 1942 it had obtained a right of way agreement or deed therefor.

In this appeal the plaintiffs contend the trial court erred in two respects (1) in failing to determine that the land taken belonged to them and (2) in submitting the question of ownership to the jury. We shall discuss these points, which appear to us as basically interrelated, in the following context: Was the question of ownership properly submitted to the jury and is the jury's verdict supported by the evidence? We believe both inquiries require affirmative answers.

We should begin by saying that the Wittkes requested the court to instruct the jury to return a verdict in their favor in such sum as would fully compensate them for the land taken and their damages. The court did not give this instruction, as such, but told the jury that the defendants denied that plaintiffs were the owners of the land taken and entitled to compensation therefor, and that the burden of proof was upon plaintiffs to prove they were the owners at the time of the taking. The court further instructed that if plaintiffs sustained that burden of proof the jury was then to determine the damages sustained by them, but if the plaintiffs did not sustain their burden then the verdict should be for defendants.

Inverse condemnation proceedings have been recognized by this court for a good many years. In *State Highway Comm. v. Puskarich,* 148 Kan. 388, 83 P. 2d 132, we said:

"It is the settled law in this state that where a corporation, having the power of eminent domain, enters upon and appropriates the land of any person for public purposes, without having acquired the title thereto by formal condemnation or otherwise, the landowner may waive formal condemnation and may sue upon an implied contract for the value of the property taken. In *Cohen v. St. L., Ft. S. & W. Rld. Co.,* 34 Kan. 158, 8 Pac. 138, the rule was formulated as follows:

" 'Where a railroad company has constructed and is operating its railroad through a piece of land belonging to another, without having obtained a right of way by any formal condemnation proceedings, and without having procured

any title to the land over which it operates its railroad or any easement therein, the owner of the land may waive formal condemnation proceedings and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may commence an ordinary action to recover compensation for all the damages which he has sustained by reason of the permanent taking and appropriation of the right of way by the railroad company.' (Syl. ¶ 1.)

"See, also, *Railroad Co. v. Yount,* 67 Kan. 396, 73 Pac. 63; *K. C. & S. W. Rly. Co. v. Fisher,* 53 Kan. 512, 36 Pac. 1004; *Hubbard v. Power,* 89 Kan. 446, 131 Pac. 1182." (pp. 390, 391.)

Similar recognition of the doctrine is to be found in *Atchison v. State Highway Comm.,* 161 Kan. 661, 171 P. 2d 287; *Dugger v. State Highway Commission,* 185 Kan. 317, 342 P. 2d 186; *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934; and *State Highway Commission v. Bullard,* 208 Kan. 558, 493 P. 2d 196.

Our case law fully accords with the generally prevailing rule. In 27 Am. Jur. 2d, Eminent Domain, § 478, p. 411, we find it said:

"In many jurisdictions, 'inverse condemnation,' or a proceeding in the nature thereof, is a remedy available to one whose land has been taken for public use. 'Inverse condemnation' has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings. . . ."

As has been said, one of the issues in the instant case concerned the ownership of the five foot strip of land used to widen the county road, and conflicting evidence was adduced on this question. It would seem to be elementary that before the plaintiffs could recover damages in this action, they would have to establish their ownership of the land taken for the additional roadway. This, it appears to us, was an essential component of their case. Without proof of ownership, the Wittkes would have no cause of action for damages resulting from the taking. Both from the pleadings and from the pretrial order it is clear that ownership had become a disputed issue of fact in this case; it was a controverted issue which, in our opinion, was for the jury to determine.

Under the broad heading of Eminent Domain in 30 C. J. S., subdivision IX is devoted to the remedies of a property owner and a discussion of the proceedings available to a landowner to recover compensation for property unceremoniously taken by public authority without paying therefor. (§§ 389-448.) Section 436, dealing

with questions of law and fact, recites that questions of law in such kind of actions are for the court to determine, while questions of fact are to be determined by the trier of facts—which in the present case was the jury. The author of this section of the text goes on to state that among the various questions which have been held to be for the trier of facts are questions going to the plaintiff's ownership of the property taken and the extent of his title.

We believe the trial court correctly instructed the jury that the burden of proving ownership lay with the plaintiffs. This instruction corresponds with the rule set out in 30 C. J. S., Eminent Domain, § 427b, p. 560, where it is said that in actions for the taking or injuring of private property for public use the burden lies with the plaintiff to establish every fact essential to entitle him to the relief asked for and "the burden is on him to show such an interest in the property taken as to entitle him to maintain the action, and to prove his property right and the infringement thereof." A good many cases from numerous jurisdictions are cited in support of the text.

The plaintiffs call our attention to *Brock v. State Highway Commission*, supra, as supporting their argument that the question of ownership should have been determined by the court, not by the jury. We do not view *Brock* in that light. The *Brock* case, it is true, was a proceeding in the nature of an inverse condemnation, but there the similarity ends. In *Brock* it was contended that the Highway Commission had taken certain rights of access to Mr. Brock's property and that this constituted a compensable taking of his property. However, there was no question in that case as to the title or ownership of the real estate alleged to have been damaged by the taking of access rights; Brock was the only party claiming ownership and his title to the property was not in controversy. It was under those particular circumstances that we said in the course of our opinion that the trial court should either instruct the jury there was a compensable taking or direct a verdict for the defendant.

The *Brock* case dealt with what was a compensable taking, not with who owned what was taken. We believe the distinction is significant. In our opinion *Brock* provides no precedent for saying that under the facts of the instant case the disputed issue of ownership was a question for the court to determine as a matter of law.

Proceeding to the evidence, the record before us indicates that in 1942 the Wittkes made arrangements to purchase the 20 acre

tract from the Federal Farm Mortgage Corporation which shortly before had obtained a deed to the acreage, apparently in satisfaction of a mortgage indebtedness. On December 5, 1942, the Federal Farm Mortgage Corporation deeded the tracts "except .53 acres previously released for road purposes", to the Federal Land Bank of Wichita. Under date of October 9, 1944, the Federal Land Bank executed a corporation special warranty deed conveying the 20 acre tract: "EXCEPT .53 acres previously released for road purposes" to Sophia Wittke. These deeds were admissible in evidence on the issue of ownership. In 30 C. J. S. § 429, p. 564, we find this rule stated with respect to the competency of evidence on the issue of title in an inverse condemnation proceeding:

"As in other civil actions plaintiff may, subject to the general rules stated supra § 428, show his title by any competent evidence. For such purpose plaintiff may put in evidence a deed, a will, a decree in partition under which he claims, or a lease under which he holds.

"Likewise, under the same restrictions defendant may introduce any competent evidence to show title in himself or in a third person. . . ."

Additional evidence was introduced through the testimony of Paul Johnson, the Smith County Engineer, who testified that the records of his office contained petitions for opening the original 60 foot road and a certificate executed by Edward Knapp, a former county engineer, that 70 feet had been secured from the county line to No. 9 highway; that he, Johnson, was led to believe the county had already obtained the 5 foot right of way on the east side of the Wittke property as it had been a policy for years that dedication deeds be filed in his office and that they had deeds for all the other property for a full five miles; that while there was no deed in his office for the Wittke property there was a slip of paper with the notation "Federal Land Bank" in the file with all the other signed agreements; that the road along the east side of the Wittke property was widened from 60 to 70 feet and "there was actually 35 feet from the center of the road to Mr. Wittkes property line"; and that he put "a tract of land which is 660 feet long and 35 feet wide at .53 of an acre." This acreage would of course correspond to that set forth in the exception found in the two deeds, the one from the Federal Farm Mortgage Corporation to the Federal Land Bank of Wichita, the second from the Federal Land Bank to Mrs. Wittke.

We believe the foregoing evidence was amply sufficient to justify the jury's verdict in favor of the defendants. Our invariable rule has been, and still is, that a verdict supported by substantial compe-

tent evidence will not be disturbed or set aside on appeal. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 495.)

It is true that the Wittkes maintained the exceptions set out in the deed to Mrs. Wittke referred, not to the county highway on the east, but to a 40 foot roadway or lane which in the past extended east and west a distance of 1320 feet along the south line of their 20 acre tract to an old water mill, and which had been legally vacated in 1953. Obviously the jury did not buy this version, as their verdict went the other way.

No error appears in the judgment of the court below and the same is affirmed.