874 F.2d 717
 LANDMARK LAND COMPANY OF OKLAHOMA, INC., an Oklahoma
corporation, Plaintiff-Appellant,
v.
R.E. "Buck" BUCHANAN, in his individual capacity and as
Commissioner, County of Oklahoma County; The
County of Oklahoma County, an Oklahoma
County Government, Defendants,
and
Dennis W. Beach, in his individual capacity and as City
Manager, City of Del City; James H. Nolen, in his
individual capacity and as former Mayor, City of Del City;
Michael Chavez, in his individual capacity and as Mayor,
City of Del City; Elvin L. Miller, Brock Zimmerman, Mike
McIlvoy, Randy Dahlke, Steve Wilkerson, and Zack Pierce, all
in their individual capacities and as Councilmen, City of
Del City; The City of Del City, an Oklahoma municipal
corporation; Colonel Ray D. Reaves, in his individual
capacity and as Base Commander, 2854th Air Base Group;
General Richard A. Burpee, in his individual capacity and as
Commanding Officer, Oklahoma City Air Logistics Command,
Defendants-Appellees.
 Nos. 85-2458, 85-2538.
 United States Court of Appeals,
Tenth Circuit.
 May 3, 1989.
 
 Richard G. Carlisle of Herrick, Feinstein, Kansas City, Mo. (Eric J. Groves of Groves, Bleakley & Tague, with him on the brief), for plaintiff-appellant.
 Laura E. Frossard, Atty., Dept. of Justice, Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., Washington, D.C.; William S. Price, U.S. Atty., Roger W. Griffith, Asst. U.S. Atty., Oklahoma City, Okl., Dorothy R. Burakreis, Robert L. Klarquist, and Albert M. Ferlo, Jr., Attys., Dept. of Justice, Washington, D.C., on the brief), for defendants-appellees Reaves and Burpee.
 Margaret McMorrow-Love of Fellers, Snider, Blankenship, Bailey & Tippins, Oklahoma City, Okl. Robert H. Macy, Dist. Atty., Oklahoma City, Okl., for defendant Buchanan.
 Edwin F. Garrison of Looney, Nichols, Johnson & Hayes, for defendant County of Oklahoma County, with her on the brief, for defendants-appellees Beach, Nolan, Chavez, Miller, Zimmerman, McIlvoy, Dahlke, Wilkerson, Pierce and City of Del City.
 Before SEYMOUR, McWILLIAMS, and TACHA, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Plaintiff Landmark Land Company of Oklahoma filed suit against various officials of the City of Del City, Oklahoma, a county commissioner of Oklahoma County, and officers in charge of Tinker Air Force Base alleging a taking of property without just compensation, related constitutional violations, and pendent state causes of action. Landmark appeals an order of the district court dismissing its complaint for failure to state a claim for which relief can be granted. We affirm.
 
 I. BACKGROUND
 
 2
 Landmark alleges, in essence, that between approximately August 1984 and the filing of this suit in June 1985, it was frustrated in its efforts to develop a neighborhood shopping center in Del City by the actions of the City and certain of its officials, a commissioner of Oklahoma County, and two Air Force officers of Tinker Air Force Base. Interpreting the complaint in the light most favorable to Landmark, as we must on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), see Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1357 (1969), the specific facts are as follows.
 
 
 3
 In 1982, Landmark's predecessor in interest acquired a piece of property consisting of approximately twenty-eight acres of land located within the boundaries of Del City and Oklahoma County. It successfully filed an application to have the property rezoned from R-1 residential to C-2 commercial in May of that year. In March 1983, Landmark filed a preliminary site plan with Del City, which responded by suggesting a number of changes that would facilitate development of the property.
 
 
 4
 Over the course of the next year, Landmark filed numerous documents concerning planned development of the property, including revised site plans, applications for grading permits, and a request for a lot split, all of which were either explicitly or tacitly approved by the City. Landmark expended resources in preliminary grading and ditch development, and granted the County an easement over part of its property so that the County could expand an abutting road. Dennis Beach, the Del City city manager, assured Landmark that dedication of this easement would fulfill right-of-way obligations that Del City imposed on commercial developments.
 
 
 5
 In August or September 1984, some unnamed combination of defendants made known "their mutually agreed intention, to delay, to impede and ultimately to prevent the construction of any further commercial improvements on the subject property." Rec., vol. I, doc. 1, at 1 (Complaint). The apparent vehicle of this conspiracy was the Tinker Air Force Base Air Installation Compatibility Use Zone (AICUZ). The AICUZ is a suggested zoning plan for areas surrounding United States Air Force bases. Landmark's proposed shopping center would be inconsistent with Tinker's AICUZ.
 
 
 6
 In approximately November 1984, General Richard A. Burpee and Colonel Ray D. Reaves initiated pressure tactics to convince Del City to adopt the AICUZ as a city ordinance. They were assisted in this effort by R.E. "Buck" Buchanan, Commissioner of Oklahoma County. In January 1985, the City Planning Commission began official consideration of the proposed ordinance. The initial hearing was delayed, at Landmark's request, until February 27, 1985. The City Council began considering the ordinance shortly thereafter, but immediately tabled it for 120 days.
 
 
 7
 Beach informed Landmark that Del City would issue it no building permits pending consideration of the ordinance.[1] Landmark appealed this decision to the Del City Board of Adjustment. After a hearing, the Board upheld Beach's decision. As a result of Del City's failure to issue permits, Landmark lost two sales of portions of its property, and has been unable to proceed with development. In June 1985, it filed this action against Beach, Buchanan, Burpee, Reaves, and numerous current and former members of the Del City City Council, all in their individual and official capacities, and against the City and County.
 
 
 8
 Landmark asserts that defendants' collective actions constituted a violation of its rights to procedural and substantive due process guaranteed by the Fourteenth Amendment, a denial of equal protection in violation of the Fourteenth Amendment, a taking without just compensation prohibited by the Fifth and Fourteenth Amendments, and an unspecified illegal conspiracy. Landmark also brings pendent state claims for the violation of the Oklahoma Constitution and for tortious interference with contractual relations. Although the complaint on its face is unclear, Landmark appears to assert its claims against the local officials under 42 U.S.C. Sec. 1983 (1982), and against Burpee and Reaves directly under the constitutional provisions. It prays for injunctive relief and twenty million dollars in damages.
 
 
 9
 On the defendants' various motions to dismiss for failure to state a claim, the district court held that none of Landmark's claims are ripe under the Supreme Court's holding in Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and "dismiss[ed] [the complaint] in toto without prejudice." Rec., vol. I, doc. 46 at 4 (Order). We affirm the district court's dismissal of Landmark's takings, substantive due process, and equal protection claims on ripeness grounds. In addition, although we hold the court's application of Williamson County to the procedural due process claim incorrect, we affirm dismissal of this claim because the complaint indicates that the procedural requirements of the Fourteenth Amendment were satisfied.
 
 II. APPEALABILITY
 
 10
 Appellees argue as a threshold matter that because the district court dismissed only the complaint and not the action, its order is not appealable. While dismissal of a complaint, as opposed to an action, is a nonfinal order and therefore not appealable, reviewing courts should "endeavor to scrutinize such orders ... in order to pinpoint those situations wherein, in a practical sense, the district court by its order has dismissed a plaintiff's action as well." Petty v. Manpower, Inc., 591 F.2d 615, 617 (10th Cir.1979) (per curiam). While dismissal of a complaint with leave to amend is not an appealable order, Thompson v. Dereta, 709 F.2d 1343 (10th Cir.1983) (per curiam), a dismissal of a complaint based upon a defect that cannot be cured by amendment is an appealable order. See Chavez v. City of Santa Fe Housing Authority, 606 F.2d 282, 283 (10th Cir.1979); Bragg v. Reed, 592 F.2d 1136, 1138 (10th Cir.1979).
 
 
 11
 In this case, it is evident from the district court's language and reasoning that it intended to "extinguish[ ] the plaintiff's cause of action." Bragg, 592 F.2d at 1138. Although the court envisioned the possibility that Landmark could bring its cause of action at some point in the future, until that time it would have no cause of action under the court's analysis. We will not strain to interpret the district court's order as merely dismissing Landmark's complaint, and not the action. We therefore conclude that the order is appealable.
 
 III. RIPENESS
 
 12
 The district court held all of Landmark's claims unripe under Williamson County based on the conclusion that "the administrative process at the local and state levels has not been completed and a final determination has not been made." Order at 2. It found this to be an adequate ground for dismissing all of Landmark's claims because "[e]ach claim has as its common denominator the issue of a deprivation." Order at 2-3. We address each of the claims in turn.
 
 A. Takings Claim
 
 13
 A section 1983 inverse condemnation claim under the Fifth and Fourteenth Amendments for a regulatory taking is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County, 473 U.S. at 186, 105 S.Ct. at 3116. A "final decision" requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question. See Williamson County, 473 U.S. at 193-94, 105 S.Ct. at 3120; MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351-52 & n. 8, 106 S.Ct. 2561, 2567-68 & n. 8, 91 L.Ed.2d 285 (1986).
 
 
 14
 In Williamson County, the planning commission had rejected the plaintiff's development plat by retroactively applying new regulations. Nonetheless, the Court held that the plaintiff's claim for regulatory taking was not ripe because the plaintiff had failed either to file for a variance from the new zoning regulation or to pursue the possibility of changes in the plat which might have brought the development at least partially into compliance with the planning commission's order. Williamson County, 473 U.S. at 186-94, 105 S.Ct. at 3116-21. Similarly, in MacDonald an allegation that the defendant county had rejected one development proposal did not support a ripe takings claim. Some further application was necessary to determine "the Board's 'final definitive position regarding how it [would] apply the regulations at issue to the particular land in question.' " MacDonald, 477 U.S. at 351, 106 S.Ct. at 2568 (quoting Williamson County, 473 U.S. at 192, 105 S.Ct. at 3119).
 
 
 15
 In this case, Landmark alleges the City indicated it would take no action on Landmark's building permit applications pending the City's consideration of the proposed AICUZ ordinance.[2] The complaint indicates that the City officially approved every application Landmark had filed until January 1985, when the conspirators allegedly took delaying action through introduction of the AICUZ ordinance. Indeed, as late as October 1984, the Del City Planning Commission resisted pressure from the AICUZ proponents and granted Landmark's application for a lot split. Complaint at 15-16. The only official action that hindered development was the denial by the Planning Commission of a use exception for a service station filed by Phillips Petroleum, not by Landmark. See supra n. 1.
 
 
 16
 The City has neither indicated definitively what level of development will be allowed on Landmark's property, nor finally and officially ruled out the possibility that Landmark will be able to proceed with its original plans. Landmark has only been subjected to approximately six months of actual delay due to defendants' efforts. In contrast, the development plan at issue in Williamson County underwent approximately eight years of revision, and was subjected to significant changes in regulations, see 473 U.S. at 176-82, 105 S.Ct. at 3111-14, yet the Supreme Court concluded that the owner still did not have a ripe takings claim without filing for variances from a newly adopted ordinance.
 
 
 17
 Landmark has alleged no efforts to explore the possibility of alternative development plans with the City. The process of clarifying what level of development Del City will permit on this particular piece of land is in a comparatively nascent stage. Landmark's claim will not be ripe until it is in a position to allege not only that its initial permit applications were denied, but also that it has made some effort to pursue compromise with the City that would allow some level of development.
 
 
 18
 It is true that the delays entailed in this requirement might result in certain injuries to landowners. Indeed, Landmark alleges it lost two sales because of the regulatory cloud over its head. However, "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership.' " Agins v. City of Tiburon, 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980) (citations omitted). If Del City "denie[s] [Landmark] all use of its property for a considerable period," Landmark will have a claim for temporary taking under the Supreme Court's recent holding in First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987). The delay in this case has not reached such proportions.
 
 
 19
 Landmark alleges that any further dealings with the City would be futile. It argues, with some merit, that it should not be required to pursue a futile course of action in order to ripen its federal cause of action. The Ninth Circuit has indicated that this sort of futility may constitute an exception to the Williamson County requirements. See Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454, Amended by 830 F.2d 968 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988); Martino v. Santa Clara Valley Water Dist., 703 F.2d 1141, 1146 n. 2 (9th Cir.), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). While leaving the precise parameters of this exception rather nebulous, however, that court has suggested in dicta that it is not applicable unless it is "clear beyond peradventure that excessive delay in such a final determination [would cause] the present destruction of the property's beneficial use." Norco Constr., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir.1986). That circuit also has indicated that at least one unsuccessful application must be made to local authorities before a landowner may use the futility exception to escape the Williamson County requirement of applying for a variance. Kinzli, 818 F.2d at 1454-55.
 
 
 20
 We need not rule on the viability of the futility theory in this circuit. Although we are obligated to construe the complaint in the light most favorable to plaintiff, we "will not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from [its] description of what happened, or if these allegations are contradicted by the description itself." 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1357 (1969); Bryan v. Stillwater Bd. of Realtors, 578 F.2d 1319, 1321 (10th Cir.1977) (allegations of conclusions or opinions not sufficient when no facts are alleged by way of the statement of the claim). Two aspects of the complaint lead us to conclude that Landmark's allegations of futility are inadequate. First, until the City commenced consideration of the AICUZ ordinance, it had approved all of Landmark's development applications. Second, Landmark filed its complaint only after six to eight months of delay, a strikingly short period of time when compared to the time frame in Williamson County. As a final observation, it is clear that the best support for a claim of futility is completion of the steps mandated by Williamson County and Yolo County: unsuccessful pursuit of either a variance or a proposal for less intense development.
 
 
 21
 In sum, we conclude that the district court properly dismissed Landmark's takings claim as unripe.
 
 
 22
 B. Substantive Due Process and Equal Protection
 
 
 23
 The district court summarily concluded that all of Landmark's claims must follow the takings claim out the courthouse door. This holding is consistent with the reasoning of Williamson County with respect to the substantive due process and equal protection allegations presented in this case.
 
 
 24
 The Fourteenth Amendment states that "No State shall ... deprive any person of ... property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, Sec. 1. Landmark could recover on its substantive due process claim if it could show that Del City deprived it of property in an arbitrary fashion. See Usury v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Before a federal court may step in and ascertain whether a local planning authority has taken property arbitrarily, however, it must allow the local authority a chance to take final action. Until it has a final action before it, a court is unable to evaluate whether property was taken and whether the local authorities' position was arbitrary. Thus, the Williamson County ripeness test applies with equal force to substantive due process claims. See Williamson County, 473 U.S. at 199-200, 105 S.Ct. at 3123; Herrington v. Sonoma County, 857 F.2d 567, 569 (9th Cir.1988); Norco Const. Co., 801 F.2d at 1145.
 
 
 25
 Similarly, in order to prevail on its equal protection claim, Landmark must show that it was treated differently than similarly situated landowners and that this different treatment lacked a rational basis. See generally Lyng v. Castillo, 477 U.S. 635, 638-39, 106 S.Ct. 2727, 2729-30, 91 L.Ed.2d 527 (1986). Before final action by Del City with respect to its development proposal, the district court cannot make this determination. Only when Landmark receives a " 'final definitive [decision] regarding how [Del City] will apply the regulations at issue' " to Landmark land will the district court be able to review "the alleged dissimilar treatment accorded similarly situated landowners." Herrington, 857 F.2d at 570 (quotinq MacDonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 106 S.Ct. 2561, 2568, 91 L.Ed.2d 285 (1986)). See also Kinzli, 818 F.2d at 1455-56; Norco Const. Co., 801 F.2d at 1145. The district court was therefore correct in applying the Williamson County test to Landmark's equal protection claim.[3]IV. PROCEDURAL DUE PROCESS
 
 
 26
 The dismissal of Landmark's procedural due process claim deserves more attention. There are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments. See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (property interest in continued public employment where discharge for cause only); Atkins v. Parker, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (property interest in continued receipt of food stamps); Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (property interest in adjudicatory process of Illinois fair employment practices statute); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (property interest in continued receipt of social security benefits); Harris v. Blake, 798 F.2d 419 (10th Cir.1986) (property interest in continued enrollment in public university after payment of tuition), cert. denied, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); Keney v. Derbyshire, 718 F.2d 352 (10th Cir.1983) (property interest in license to practice medicine).
 
 
 27
 Here, Del City's failure to issue the specific permits Landmark requested does not give rise to a ripe takings claim because this failure does not dictate the permitted level of development with sufficient finality. If Landmark had a property interest in those specific permits, however, Del City could not withhold them without affording Landmark due process. Thus, Landmark's procedural due process claim may not be dismissed as unripe. See generally Littlefield v. City of Afton, 785 F.2d 596, 599-603 (8th Cir.1986).
 
 
 28
 Whether Landmark has a property interest in the permits depends on "existing rules or on understandings that stem from an independent source, such as state law." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Landmark has a property interest in the permits in question only to the extent to which Oklahoma law or local ordinances give it a "legitimate claim of entitlement" to the permits as opposed to a mere "unilateral expectation." Id.; Littlefield, 785 F.2d at 600 (property interest exists to the extent that statutes, rules, and ordinances constrained the discretion of authorities charged with issuing the permits). We need not delve into state and local rules governing building permits, however, because even assuming Landmark had some property interest in those permits, it has not stated a claim for a violation of procedural due process.
 
 
 29
 As a basis for its procedural due process claim, Landmark asserts that Del City and Beach were unduly influenced by ex parte contacts by third persons when they denied Landmark's application for building permits, and that Landmark was not given a fair opportunity to respond to those ex parte contacts. Complaint at 28. Landmark further alleges that the decision by various members of the City Council to table the AICUZ ordinance was arbitrary and capricious. Id. at 29.
 
 
 30
 It is important to focus on what specific decisions took place, and the degree of process due at each level. As long as Landmark had "the opportunity to be heard at a meaningful time and in a meaningful manner," the "fundamental requirement of due process" is satisfied. Eldridge, 424 U.S. at 333, 96 S.Ct. at 902 (citations omitted). Landmark alleges it received a hearing from the Del City Board of Adjustment approximately a month after it requested one. Complaint at 26-27. The Board was authorized to fully review the decision of and act with the same power as City Manager Beach. Del City, Ok., Zoning Ordinance Sec. 06.025. While Landmark has alleged numerous ex parte contacts between Beach and third parties, any alleged improprieties were subject to review by the Board. Landmark has alleged no bias on the part of the Board.
 
 
 31
 With respect to Landmark's allegations that it was denied the opportunity to cross-examine witnesses against it, Landmark does not point to a source for the right to cross-examine witnesses in a building permit proceeding. In land use proceedings, parties are simply not entitled to " 'anything like a judicial hearing' " with all its adversarial trappings. Chongris v. Board of Appeals of Andover, 811 F.2d 36, 41 (1st Cir.1987) (quoting Cloutier v. Town of Epping, 714 F.2d 1184, 1191 (1st Cir.1983)), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).
 
 
 32
 Further, Landmark has the opportunity for a second hearing because the decision of the Board is subject to review by the Oklahoma district court. Okla.Stat. tit. 11, Sec. 44-110(A) (1981). In fact, it has taken advantage of this opportunity. Complaint at 27. In such an appeal, the decision of the Board of Adjustment is subject to a de novo trial of all issues. Okla.Stat. tit. 11, Sec. 44-110(D) (1981).
 
 
 33
 Whether a particular set of procedures is adequate to protect a particular interest "requires analysis of the governmental and private interests that are affected." Eldridge, 424 U.S. at 334, 96 S.Ct. at 902 (citations omitted). The Supreme Court has pointed to several factors relevant to this analysis: the private interest affected, the risk of erroneous deprivation of the interest through the procedures used to safeguard it as well as the probable value of additional procedures, and finally the government's interest in effective and cost-efficient administration. Id. at 334-35, 96 S.Ct. at 902-03. In this case, three considerations convince us that the process provided is sufficient to protect the interest affected. First, the interest affected is a right to future possession and enjoyment of the permit. The local government has not terminated possession of any interest, as occurred, for example, in the public employment cases. See, e.g., Loudermill, 470 U.S. at 543, 105 S.Ct. at 1493. Second, the scope of the Board's power in reviewing the decisions of the city manager minimizes the possibility that any impropriety on the city manager's part will infect its decision. Finally, the sole burden imposed on the party holding an interest in an unissued permit is a short additional period of delay until the hearing. See generally Cloutier, 714 F.2d at 1191-92 (revocation of sewer permit satisfied due process when "... permit had only been in plaintiff's possession a few days before it was revoked ... plaintiffs were not shown to have acted in reliance on it ... [and] [the town offered] ... prompt informal proceedings ... coupled with ... judicial review provided by the state courts.").
 
 
 34
 Thus, even assuming Landmark had a property interest in the permits, and that Beach's decision not to issue the permits was replete with improprieties, the requirements of the Fourteenth Amendment were satisfied by the de novo hearing before the Board of Adjustments and the opportunity for full review in the state courts. If Landmark had alleged improprieties at the Board of Adjustment, it would, of course, present us with a different case.
 
 V. CONCLUSION
 
 35
 We affirm the district court in holding that Landmark's takings, substantive due process, and equal protection claims are not ripe for federal review because Del City has yet to act with sufficient finality regarding the fate of the property in question. Because the requirements of due process were satisfied by the proceedings associated with the decision not to issue building permits, we also affirm the dismissal of Landmark's procedural due process claim. Given the early stage at which the federal claims were dismissed, we hold that the district court did not abuse its discretion in dismissing the pendent state claims as well. Jones v. Intermountain Power Project, 794 F.2d 546, 549 (10th Cir.1986). The order of the district court is therefore affirmed. Should the City take official action on the property at some later date, or should the delay reach more significant proportions, Landmark is of course free to file its action anew.
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 The only permit mentioned specifically in the complaint was for a gas station, a use forbidden by the C-2 zoning which Landmark had requested initially. See rec., vol. I, doc. 1, appendix A, p 12.0312. Landmark attached to one of its briefs in opposition to the motion to dismiss a document referring to a second permit, for a convenience store, which was granted five days after this suit was filed. Rec., vol. I, doc. 36, Exhibit A. Because we must interpret the complaint in the light most favorable to Landmark, we cannot assume that these were the only permits then pending
 
 
 [2]
 In its complaint, Landmark alleges that Beach decided "not to issue," and that other defendants instructed him "not to issue," building permits to Landmark. Complaint at 25-26. While this phrase could be interpreted as meaning that the City officially and finally denied such permits, we need not be concerned about rejecting this construction. Landmark does not interpret its complaint as claiming its permit requests were actually denied, but rather as claiming that applications for permits are futile because of a quasi-official stonewall policy. Appellant's Brief, pp. 7-8
 
 
 [3]
 This case presents us with an equal protection challenge to a facially neutral set of policies and procedures applied in an allegedly arbitrary and discriminatory fashion to a specific individual. Since Del City's actions do not affect a suspect class or a fundamental right, they must be reviewed under an arbitrariness standard. The final local decision which must be reviewed for arbitrariness is the decision to allow a particular level of development. That level must also be compared to that permitted other land owners, to determine if plaintiff has been treated differently
 An equal protection challenge to a policy or regulation that facially dictates different treatment for specific classes, such as blacks or other minorities, would not present us with the same ripeness problems as Landmark's claim. Such an explicit decision, for equal protection purposes, would be final and reviewable when made. Cases involving such claims may, of course, involve standing issues regarding whether the plaintiff has been adversely affected by the policy. However, the difficulty here, namely evaluating what decision has actually been made, is absent in those cases.