**MID GULF, INC., Plaintiff,**

v.

**Jeff BISHOP; City of Lansing, Kansas; Kenneth Bernard; Kenneth Ketchum; Judy Hill; Al Bodde; Jim McMillan; Richard Dodson; and William R. Bailey, Defendants.**

Civ. A. No. 89–2445–L.

United States District Court,
D. Kansas.

April 23, 1992.

On Motion for Reconsideration
June 22, 1992.

James G. Flaherty, Anderson, Byrd, Richeson & Flaherty, Ottawa, Kan., John C. Tillotson, Murray, Tillotson & Nelson, Chtd., Leavenworth, Kan., for plaintiff.

Eric D. Braverman, Morrison & Hecker, Kansas City, Mo., A. Bradley Bodamer, Robert W. Schuller, Morrison & Hecker, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff, a non-resident corporation, filed a complaint in this court against the City of Lansing, Kansas (the "City"), and certain of its municipal officers. Plaintiff alleges damages for civil rights violations, "prima facie tort" and inverse condemnation, all arising out of land use decisions by the defendants. The court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1343. This matter is currently before the court on defendants' motion for summary judgment (Doc. # 43), which was filed on October 4, 1991. A hearing was held on February 24, 1992 and the matter was taken under advisement. For the reasons set forth below, the defendants' motion is granted in part and denied in part.

This action arises out of two disputes between plaintiff and defendants. The first dispute involves the City's refusal to issue a building permit for construction of a building in the Red Rock subdivision, owned by plaintiff. Plaintiff alleges that the City's action in refusing to issue a building permit constituted a denial of its constitutionally protected substantive and procedural due process rights with respect to the development of its real estate. It claims that, as a result of defendants' actions, plaintiff lost a sale of a tract of its real estate and that its ability to develop and sell the remainder of its real estate has been impaired (Count I). Furthermore, it alleges that the action of defendant Bishop

in denying the application for a building permit constituted a prima facie tort for which plaintiff is entitled to actual and punitive damages (Count II) and that the City's actions have imposed an onerous economic impact upon plaintiff's property rights amounting to inverse condemnation (Count III).

The other dispute between plaintiff and defendants arises out of the City's regulations on drilling for oil and gas within the City's limits. Plaintiff claims that the actions of the defendants in denying plaintiff's initial conditional use permit application and in subsequently granting a permit *sua sponte*, subject to alleged unreasonable restrictions and conditions, constitute a prima facie tort (Count IV),[1] and that the regulations imposed by the City on drilling for oil and gas imposed onerous barriers which resulted in the taking of plaintiff's property interest, entitling plaintiff to relief by way of inverse condemnation.

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," however, summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### Factual Background

Plaintiff is a Texas corporation licensed to do business in the state of Kansas. Defendant Bishop is the City Administrator for the City of Lansing. Defendants Bernard, Ketchum, Hill, Bodde, McMillan, Dodson and Bailey are the Mayor and city

---

1. At the pretrial conference, plaintiff sought to allege claims for denial of its substantive and procedural due process rights pursuant to 42 U.S.C. § 1983 under Count IV. Defendants objected to the inclusion of a § 1983 claim on the grounds that the plaintiff failed to state a claim under § 1983 in its amended complaint, the court's deadline for amending pleadings had passed without plaintiff seeking to add a § 1983 claim to Count IV, and the matter had been fully briefed on defendant's motion for summary judgment based on the assumption by all parties that plaintiff was not making a § 1983 claim in Count IV. The court agrees with the defendants and holds that the plaintiff will not be allowed to amend Count IV to include a § 1983 claim for denial of its substantive and procedural due process rights.

councilpersons for the City of Lansing. The relationship between the plaintiff and the defendants has followed a twisted path in arriving at this juncture.

Plaintiff owns the Red Rock subdivision, which, prior to August of 1989, was located in an unincorporated area of Leavenworth County, Kansas. Plaintiff and the Leavenworth Board of County Commissioners were involved in state court litigation regarding zoning approval for the subdivision plat. In July of 1989, a settlement was reached in that action whereby the Leavenworth County Planning Commission approved a subdivision plat. Plaintiff proceeded to file this subdivision plat in the office of the Leavenworth County Register of Deeds.

Following the entry of the consent judgment, the City attempted to intervene in the state court action to challenge approval of the subdivision plat. The City's request to intervene was denied. Thereafter, on August 17, 1989, the City adopted an ordinance annexing the Red Rock subdivision. Plaintiff immediately challenged the annexation in state court. The annexation was eventually declared invalid. However, the City has continued to attempt to annex the property. Its second attempt was declared invalid by the state court. Not to be daunted, the City annexed the property a third time, effective September 26, 1991. Plaintiff's challenge to this third annexation attempt was still pending on the date this motion was heard.

On August 18, 1989, plaintiff sold one lot from the subdivision to a purchaser subject to the purchaser obtaining a building permit. On August 22, 1989, the plaintiff's real estate agent applied to defendant Bishop for the permit. Bishop stated that the City would not accept any building permit applications for the Red Rock subdivision because of the uncertain status of the property due to the litigation regarding the City's annexation of the property. The plaintiff pursued the matter no further with the City before filing this action.

Plaintiff also became holder of a leasehold interest in oil and gas under a lease executed by the Leavenworth Country Club as lessor and the plaintiff as lessee in August of 1987. On August 4, 1987, plaintiff filed an application with the City for a conditional use permit ("C.U.P.") for drilling on the Country Club property. On August 6, 1987, the Lansing city council adopted a resolution imposing a ninety day moratorium on the issuance of any further oil and gas drilling permits.

On December 13, 1987 the Lansing city council enacted city ordinance No. 403, which regulates the drilling and operation of oil and gas wells within the city limits. The new ordinance established strict requirements for the issuance of a C.U.P. to drill for oil and gas. Plaintiff contends these requirements are unreasonable and that the ordinance was passed with the intent to prohibit the drilling of oil and gas wells within the city limits.

The Lansing city council denied plaintiff's C.U.P. application on August 4, 1988. Shortly thereafter, plaintiff filed a state court action requesting that the court order the City to issue the C.U.P. Subsequently, the city council revisited the matter and did issue a C.U.P. to plaintiff. However, plaintiff contends that the conditions imposed by the C.U.P. were strict beyond reason and logic and far exceeded any standard necessary to protect the general health, safety and welfare. According to plaintiff, the restrictions imposed by the City regulations served to make any drilling economically unfeasible. In any event, plaintiff's leasehold interest had expired by the time the City issued the C.U.P.

*Inverse condemnation and substantive due process claims involving the building permit for the Red Rock Subdivision*

Based upon the Tenth Circuit's opinion in *Landmark Land Co. of Oklahoma, Inc. v. Buchanan*, 874 F.2d 717 (10th Cir.1989), plaintiff's inverse condemnation and substantive due process claims arising out of the building permit denial are not ripe for adjudication. In *Landmark*, a land developer filed suit against various city officials, a county commissioner and Air Force base officers alleging

taking of property without just compensation and denial of due process and equal protection in connection with the city's failure to issue certain building permits. The Court in *Landmark*, relying on the Supreme Court's decision in *Williamson County Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), noted that a § 1983 inverse condemnation claim under the Fourteenth Amendment for a regulatory taking is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." A "final decision" requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question. *Landmark*, 874 F.2d at 720.

The *Landmark* court noted that the city had neither indicated definitely what level of development would be allowed on Landmark's property, nor finally and officially ruled out the possibility that Landmark would be able to proceed with its original plans. The court noted that Landmark had alleged no efforts to explore the possibility of alternative development plans with the city. The court held that Landmark's claim would not be ripe until it was in a position to allege not only that its initial permit applications were denied, but also that it had made some effort to pursue compromise with the city that would allow some level of development. *Id.* at 721.

■ After concluding that the district court properly dismissed Landmark's takings claim as unripe, the appellate court analyzed the district court's finding that *Landmark*'s substantive due process claim "must follow the takings claim out the courthouse door". The circuit court, in agreeing with the court below, noted that *Landmark* could recover on its substantive due process claim if it could show that the city deprived it of property in an arbitrary fashion. However, before a federal court may step in and ascertain whether a local

planning authority has taken property arbitrarily, it must allow the local authority a chance to take final action. Until it has a final action before it, a court is unable to evaluate whether property was taken and whether the local authorities' position was arbitrary. Thus, the court concluded that the *Williamson County* ripeness test applies with equal force to substantive due process claims. *Id.* at 722.

The facts in the present case do not satisfy the *Williamson County* ripeness test. There has been no determination by the City of what level of development will finally be allowed on the Red Rock subdivision property. The parties are currently involved in state court litigation regarding whether the property will finally be annexed as part of the City. It is still entirely possible that plaintiff could be allowed to develop the subdivision as originally planned. It is true that the City refused to accept plaintiff's original building permit. However, following that denial plaintiff filed this action and there has been little or no dialogue between plaintiff and the City as to what development finally will be allowed on the property. Based upon the *Landmark* and *Williamson County* decisions, plaintiff's inverse condemnation and substantive due process claims are not ripe and will be dismissed without prejudice.

*Plaintiff's procedural due process claim involving the building permit for the Red Rock Subdivision*

■ The Tenth Circuit has declared that procedural due process is satisfied when the litigant has "the opportunity to be heard at a meaningful time and in a meaningful manner." *Landmark*, 874 F.2d at 723. In this case, procedures were available to the plaintiff to review the City's decision not to accept the building permit application. After the city council made the decision not to accept building permit applications until the plaintiff's challenge to the City's annexation of the affected property was resolved, plaintiff could have taken an appeal to the board of zoning appeals pursuant to Kansas Statutes Annotated § 12–715. K.S.A. § 12–714 provides that the governing body of any city which

has enacted a zoning ordinance shall by ordinance create a board of zoning appeals. K.S.A. § 12–715 provides that "appeals to the board may be taken by any person aggrieved ... by *any decision* of the officer administering the provisions of the zoning ordinance" (emphasis added).

Plaintiff argues that it was not required to appeal to the zoning board because plaintiff had not been denied zoning, but had been denied the opportunity to apply for a permit. This argument is unconvincing based on the language of K.S.A. § 12–715, which provides that *any* decision of the officer administering the provisions of the zoning ordinance may be appealed. This includes a decision not to accept an application as well as a decision to deny an application. Because procedural due process is satisfied if a litigant had the *opportunity* to be heard at a meaningful time in a meaningful manner, the administrator's unchallenged refusal to accept plaintiff's building permit does not give rise to a procedural due process claim here. Plaintiff failed to take advantage of the appeal procedures available and chose instead to file this action. Thus its procedural due process claim also will be dismissed without prejudice.

### Plaintiff's prima facie tort claims

At the hearing on defendants' summary judgment motion, plaintiff agreed to abandon its prima facie tort claims. Therefore, defendants' motion for summary judgment as to plaintiff's prima facie tort claims is granted. Due to plaintiff's abandonment of its prima facie tort claims, it is not necessary for this court to make a determination as to whether Kansas courts would recognize prima facie tort as a theory of liability.[2]

### Plaintiff's inverse condemnation claim involving the oil and gas conditional use permit

Plaintiff's final claim alleges that the requirements imposed by the City regarding drilling for oil and gas within the City's limits are unreasonably onerous and resulted in a taking of plaintiff's leasehold interest, thereby entitling plaintiff to relief by means of inverse condemnation against the City. The language of Count V of plaintiff's complaint, as supplemented by the pretrial order, actually seems to state two separate inverse condemnation claims for relief. One of these is a state claim under Kansas inverse condemnation law and this court's diversity jurisdiction. The other is a federal claim through the 14th and 5th amendments of the United States Constitution and this court's § 1983 jurisdiction. In any event, this entire area of the law is somewhat murky and merits a bit of detailed discussion here.

It has been a point of some confusion among courts faced with a regulatory taking claim premised on a governmental entity's exercise of its police power, as is presented in this case, whether the claim is properly characterized as an inverse condemnation claim or simply as a "taking" claim pursuant to the 14th and 5th amendments of the United States Constitution. Prior to the Supreme Court's decision in *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), it appeared that a distinction existed between state inverse condemnation claims and "taking" claims under the 14th and 5th amendments of the Constitution arising out of a governmental entity's exercise of its police power. This apparent distinction was based on the notion that the exercise of the police power was designed to prevent harm to the public through the general application of regulations that may burden some but on balance benefit all. In these cases a heavy onus was placed upon a property owner seeking compensation, including showing the deprivation of all beneficial use. On the other hand, inverse condemnation did not involve that sort of activity. It implicated, instead, a "more entrepreneurial activity," one for the benefit of a government enterprise. Hence, compensation was readily allowed

---

2. The term "prima facie tort" has appeared rarely in Kansas opinions and then only as part of a laundry list of theories of liability asserted by one of the parties. No published Kansas opinion to date has directly recognized the theory of prima facie tort.

where the essential elements were established. *See Q C Corporation v. Maryland Port Administration,* 68 Md.App. 181, 510 A.2d 1101 (1986); *see also Sax, Takings and the Police Power,* 74 Yale L.J. 36 (1964).

In *First Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), the Supreme Court seems to have eliminated this distinction. In *First Lutheran,* defendant Los Angeles County had adopted an interim ordinance pursuant to its police powers that prohibited the construction or reconstruction of any building or structure located in an interim flood protection area. This area included land on which a church campground had stood. Shortly after the ordinance was adopted, the church filed suit in a California court, alleging that the ordinance denied the church all use of its property and seeking to recover damages in inverse condemnation for loss of use. The Supreme Court held that, under the Just Compensation Clause, a landowner is entitled to bring an action in inverse condemnation under such circumstances as a result of the self-executing character of the constitutional provision with respect to compensation. *Id.* at 315, 107 S.Ct. at 2386. The Supreme Court noted that while the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings. *Id.* at 316, 107 S.Ct. at 2386. It is clear from the Supreme Court's ruling in *First Lutheran* that a property owner may properly bring an action labeled as "inverse condemnation" pursuant to the 14th and 5th amendments of the United States Constitution premised upon a governmental entity's restriction of a property owner's use of his or her property pursuant to the police power.

As previously noted, plaintiff's complaint purports to state a claim under Kansas inverse condemnation law as well as under federal constitutional inverse condemnation law. It is therefore necessary for this court to analyze whether there is actually a difference between such state and federal claims.

Inverse condemnation has long been recognized in Kansas. *See Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965); *Wittke v. Kusel,* 215 Kan. 403, 524 P.2d 774 (1974). Kansas courts have stated that inverse condemnation is an action or eminent domain proceeding initiated by a person having an interest in realty rather than by a government condemner. It is available when private property *has actually been taken for public use* without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the property. *Ventures in Property I v. City of Wichita,* 225 Kan. 698, 594 P.2d 671 (1979). Kansas courts have routinely held that for inverse condemnation to lie, it is usually required that an entity with eminent domain authority acquire possession of the property in question and control the property to the exclusion of the owner. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Trans.,* 234 Kan. 121, 671 P.2d 511 (1983).

The Kansas requirement that the governmental entity actually acquire possession of property in order for an inverse condemnation action to lie would seem to be at odds with the Supreme Court's holding in *First Lutheran* that a property owner can bring an inverse condemnation action based upon a government entity's restriction of the owner's use of the property pursuant to its police power. However, Kansas courts have also recognized that if a government, by exercise of its police powers, imposes a restriction upon property which is so oppressive that it denies the owner the use, benefit and enjoyment of the realty, it may be deemed to have taken the land and thus be obligated to pay compensation. *Lone Star Industries, Inc.,* 243 Kan. at 125, 671 P.2d 511; *Ventures in Property I v. City of Wichita,* 225 Kan. at 710, 594 P.2d 671. Therefore, while not specifically delineated as an "inverse condemnation" claim, Kansas courts have recognized that a government entity's restriction of an owner's use of property pursuant

to its police power can result in a compensable taking. Kansas state law, then, while not specifically referring to the action as inverse condemnation, seems to provide for the same relief for a regulatory taking as provided in *First Lutheran.*

■ In discussing regulatory takings claims, the source of law on which Kansas courts rely is not always clear. However, Kansas courts do rely on United States Supreme Court decisions as well as prior Kansas decisions. *State ex rel. Stephan v. Lane,* 228 Kan. 379, 614 P.2d 987 (1980). From a review of the Kansas case law, this court is of the view that there is fundamentally no difference in the regulatory taking analysis whether premised on Kansas law or on federal constitutional grounds pursuant to the 14th and 5th amendments and this court's § 1983 jurisdiction.

■ In this case the City, pursuant to its police powers, enacted and enforced regulations on drilling for oil and gas within its limits. The police power is wide in its scope and gives governmental bodies broad powers to enact laws to promote the general health, safety and welfare of the people. Broad discretion is vested in the governing body to determine for itself what is deleterious to health and safety or is inimical to public welfare. *State ex rel. Stephan v. Lane,* 228 Kan. at 392, 614 P.2d 987. It is apparent that regulation of drilling for oil and gas within a city's limits is a proper area for regulation by a city pursuant to its police powers, due to the possible hazards to the general health, safety and welfare of that city's residents that such drilling could create. Therefore, the question as to whether a taking occurred in this case involves an analysis of whether the actions taken by the City exceeded the proper use of its police power, therefore resulting in a compensable taking.[3]

■ The United States Supreme Court has recognized two methods to establish a regulatory taking by a governmental entity. Land use regulation can effect a taking if it does not substantially advance legitimate state interests or if it denies an owner all economically viable use of his or her land. *See Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 U.S. 470, 485, 107 S.Ct. 1232, 1241, 94 L.Ed.2d 472 (1987) and cases cited therein.

In analyzing the substantial advancement of legitimate state interests, courts have focused on the government interest being advanced by the regulation. There is no question in this case that the City may regulate oil and gas drilling and operations within city limits to protect the public health, safety and welfare. In fact, in instances in which a state tribunal reasonably concluded that the public health, safety or welfare would be promoted by prohibiting particular contemplated uses of land, the Supreme Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests. *See Penn Central Trans. Co. v. New York City,* 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) and cases cited therein.

■ The power of government entities to regulate land uses pursuant to the police power is not absolute, however. A governing body "does not possess such plenary powers so as to pass legislation which is arbitrary, oppressive, or so capricious that it has no reasonable basis." *Delight Wholesale Co. v. City of Prairie Village,* 208 Kan. 246, 250, 491 P.2d 910 (1971). To justify a government entity's assertion of its authority on behalf of the public, it must appear that the interests of the public require such interference and that the means are reasonably necessary for the accomplishment of the purpose and not un-

---

**3.** Defendants cite several Kansas cases for the proposition that landowners are not entitled to compensation when a city exercises its police powers. *See Kansas City Power & Light Co. v. Kansas Corporation Commission,* 238 Kan. 842, 715 P.2d 19 (1986); *Lone Star Indus., Inc. v. Secretary of the Kansas Dept. of Trans.,* 234 Kan. 121, 671 P.2d 511 (1983). However, these cases emphasize that constitutional provisions against taking private property for public use without compensation impose no barrier to the *proper* exercise of the police power. A city, however, cannot exercise its police power in an unreasonable, arbitrary or capricious way. *Delight Wholesale Co. v. City of Prairie Village,* 208 Kan. 246, 249–50, 491 P.2d 910 (1971).

duly oppressive upon individuals. Whether a regulation is reasonable depends upon such things as the nature of the menace against which it will protect, the magnitude of the curtailment of individual rights affected and the availability and effectiveness of other less drastic protective measures. *Goldblatt v. Hempstead,* 369 U.S. 590, 594–95, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962).

■ For the purposes of this motion, plaintiff has come forward with evidence that the City's regulations go beyond those reasonably necessary to protect the public health, safety and welfare. There is also some evidence indicating that the restrictions imposed here were actually designed to foreclose, indirectly, drilling for oil and gas within the city limits despite an ordinance which apparently permits such activity. Accordingly, this court finds that there are genuine issues of material fact which preclude entry of summary judgment.[4]

■ Although this case contains facts that preclude summary judgment on the substantial advancement of legitimate state interests factor, this court finds that the second factor courts have considered in takings analysis, denial of economically viable use of land, does not apply to the plaintiff in this case. Plaintiff owned only a leasehold interest in the oil and gas rights pursuant to a lease with the Leavenworth Country Club. The mere fact that the oil and gas drilling regulations may have deprived plaintiff of any economically viable use of its *leasehold interest* is not sufficient to constitute a taking. The parcel must be looked at as a whole, including Leavenworth Country Club's surface rights. The Supreme Court has stated that:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole ...

*Penn Central Trans. Co. v. New York City,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978).[5]

It is apparent that the surface rights retained by Leavenworth Country Club, which are not affected by the regulations, retain their value. When looked at as a whole, the regulations imposed by the City do not destroy all economic value of the property.

■ Another way in which the Supreme Court has analyzed whether regulation denies economically viable use of land is to look at the owner's reasonable investment-backed expectations. *Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 U.S. 470, 493, 107 S.Ct. 1232, 1246, 94 L.Ed.2d 472 (1987). Here, if the City's drilling regulations are found to be reasonable, then the actions of defendants could not have interfered with plaintiff's reasonable investment-backed expectations. Plaintiff was fully aware when it obtained the leasehold interest that the City could regulate drilling in accordance with its police powers

4. Defendants argue that any challenge by plaintiff to the reasonableness of the regulations is barred by res judicata. Defendants note that plaintiff previously challenged the reasonableness of the regulations in state court and subsequently dismissed that count with prejudice. However, the counts that were dismissed with prejudice were brought pursuant to Kansas Statutes Annotated § 12–712. K.S.A. § 12–712 does not authorize an award of money damages, it merely provides a mechanism to set aside unreasonable zoning ordinances in the absence of fraud, bad faith, or actual taking of property. *J.M. Jack v. City of Olathe,* 245 Kan. 458, 781 P.2d 1069 (1989). Plaintiff's state court inverse condemnation claim, which this court believes encompasses its challenge based on reasonableness for the purpose of recovering money damages, was specifically dismissed *without* prejudice. Therefore, this court holds that plaintiff is not barred by the doctrines of res judicata or collateral estoppel from challenging the reasonableness of the regulations for the purposes of its taking claim.

5. The language of the majority opinion in *Penn Central* echoes the language of Justice Brandeis in *Pennsylvania Coal v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). It is apparent that Justice Brandeis' dissenting view in *Pennsylvania Coal* has become the majority view.

to preserve the health and safety of its residents. If the regulations adopted by the City are determined to have been reasonable, the plaintiff would be left with an argument that when purchasing the leasehold interest with a view to drilling for oil and gas, the plaintiff did not reasonably expect that the City would enact reasonable regulations regarding drilling for oil and gas within the city limits. This court finds that such an argument would be untenable. The plaintiff took a business risk that it could obtain a C.U.P. which would allow it to exploit its property interest. If it is thwarted from doing so only by reasonable regulations designed to protect the public health, safety and welfare, it will not be protected by the court against the downside of that business risk materializing.

Because a trial will be necessary to resolve the issues in this case, some discussion of procedure at this point becomes appropriate. The issue of whether the City's regulations are unreasonable and effect a taking is a question of law for the court. *Naegele Outdoor Advertising v. City of Durham,* 844 F.2d 172 (4th Cir. 1988); *Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965). If so, then damages are a question of fact for a jury. *Brock,* 195 Kan. at 366, 404 P.2d 934. The jury will be impaneled at the outset, and will hear all the evidence, but will be instructed that the only issue for it to consider will be the matter of damages. The taking question will be decided by the court on a Rule 50 motion for judgment as a matter of law before submission of the case to the jury to determine any damages.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. # 43) is granted as to Counts I and III of plaintiff's complaint to the extent that these claims are dismissed without prejudice on ripeness grounds. Defendants' motion is denied on all other grounds relating to Counts I and III. Defendants' motion is granted as to Counts II and IV on all grounds. Defendants' motion is denied as to Count V of plaintiff's complaint.

IT IS FURTHER ORDERED that this matter be set on the trial calendar for June 9, 1992 as the Number One case for trial.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

Defendants in this action filed a motion for summary judgment with the court seeking summary judgment on all plaintiff's claims. On April 23, 1992, this court issued a memorandum and order which granted in part and denied in part defendant's motion. This matter is currently before the court on defendant's motion for reconsideration (Doc. # 67). In that motion the defendant requested, in the alternative, bifurcation of the trial on the issue of the reasonableness of the City's actions from the trial on the issue of damages. The court held a hearing on that motion on June 16, 1992, and granted it in part and denied it in part.

For the reasons set forth below as well as on the record, defendants' motion to reconsider is granted as to plaintiff's federal constitutional takings claim, and defendants are granted summary judgment on that claim. Defendants' motion to reconsider is denied as to plaintiff's state law inverse condemnation claim. Further, defendants' request for a bifurcated trial on the issue of the reasonableness of the City's actions with regard to the plaintiff's CUP request from trial on the issue of damages is granted.

In the court's order dated April 23, 1992, the court denied defendants' summary judgment motion on plaintiff's federal takings claim with regard to the CUP issue. However, after reviewing its decision, it is apparent to the court that it failed to conduct a thorough review of the ripeness issue regarding that claim. In *Williamson County Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1984), the Supreme Court held that if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation. *Id.* at 195, 105 S.Ct. at 3121. It is well established

Kansas law that a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property. *See Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965); *Wittke v. Kusel,* 215 Kan. 403, 524 P.2d 774 (1974); *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Trans.,* 234 Kan. 121, 671 P.2d 511 (1983). Plaintiff here coupled its state law inverse condemnation claim with it federal takings claim. The state law claim is still pending, as a part of this action, and plaintiff's federal claim thus is premature and not ripe for adjudication. It appears to this court that plaintiff's claim would only become ripe through a denial of its right to avail itself of the state procedure and that merely an adverse result on its state claim, following due process, if such should occur, would not render the federal claim ripe.

■ Defendants additionally argue that the state law inverse condemnation claim is not ripe due to plaintiff's failure to pursue compensation under K.S.A. § 26–501 *et seq.* and failure to exhaust its administrative remedies. The court finds no merit in defendants' arguments regarding the state law inverse condemnation claim.

The defendants have produced no authority indicating that a property owner must bring an action under the eminent domain procedure statutes, K.S.A. § 26–501, prior to filing a state law inverse condemnation action. In fact, Kansas courts have defined an inverse condemnation action as an action *or eminent domain proceeding* initiated by a person having an interest in realty rather than the government condemnor. *Ventures in Property I v. City of Wichita,* 225 Kan. 698, 594 P.2d 671 (1979) (emphasis added). The defendants also produced no authority to the effect that exhaustion of administrative remedies, if any may have been available to plaintiff, is a condition precedent to a Kansas inverse condemnation action. Additionally, the failure to exhaust administrative remedies argument fails because the court's reading of the relevant Lansing city ordinances and Kansas statutes does not indicate that the Board of Zoning Appeals had power to grant variances from the oil and gas drilling ordinance or from this condi-

tional use permit or to review a decision by the governing body of the City as an appellate panel. For these reasons, defendants' motion to reconsider is denied as to the plaintiff's state law inverse condemnation claim.

■ After a review of the facts of this case and relevant authority, it is the ruling of the court that the trial on the reasonableness of the City's regulations on oil and gas drilling should be bifurcated from the trial on the issue of damages. The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial. *See* Fed.R.Civ.P. 42(b); *Easton v. City of Boulder, Colo.,* 776 F.2d 1441, 1447 (10th Cir.1985). A district court may order separate trials of claims in furtherance of convenience, to avoid prejudice, or when separate trials would be conducive to expedition of the litigation and judicial economy.

The issue of whether the City's regulations are unreasonable and effect a taking is a question of law for the court. The damage issue is a question of fact for the jury. The court finds that a separate trial on the reasonableness issue before the court, followed by a jury trial on the damage issue if necessary, will be conducive to expedition of the litigation, will further convenience, and will avoid possible prejudice to the defendants that would occur if the reasonableness and damage issues were tried together.

IT IS, THEREFORE, BY THE COURT ORDERED THAT defendants' motion for reconsideration (Doc. # 67) is granted in part and denied in part. Plaintiff's federal takings claim is dismissed without prejudice due to lack of ripeness. Defendants' motion is denied as to plaintiff's state law inverse condemnation claim. The trial of the reasonableness of the City's regulations and the damage issue shall be bifurcated, with the trial on the reasonableness issue to be held before the court beginning at 9:00 a.m. on June 24, 1992.

IT IS SO ORDERED.